[No. 16004.    Department One.—December 10, 1895.]

SARAH A. BAILEY, RESPONDENT, *v.* MARKET STREET CABLE RAILWAY COMPANY, APPELLANT.

NEGLIGENCE — INJURY FROM STREET-CAR — CONTRIBUTORY NEGLIGENCE — CARELESS STEPPING UPON TRACK—NONSUIT.—In an action to recover damages for personal injuries received by plaintiff from collision with a moving cable-car, the act of the plaintiff in stepping backward upon the track in front of the moving car, without noticing an approaching car upon the track some ten feet distant, and in plain view, is contributory negligence, as matter of law, proximately contributing to the injury; and a nonsuit is properly granted upon that ground.

ID.—DUTY OF ONE WHO CROSSES RAILROAD TRACK—STANDARD OF NEGLIGENCE.—One who crosses a railroad track is required to be on his guard, and, as the law now stands, the standard is fixed that one must look up and down the track, and anything short of that is negligence.

ID.—RIGHT OF WAY OF STREET-CAR.—A street-car has, from necessity, a right of way over that portion of the street upon which alone it can travel, paramount to that of persons and ordinary vehicles, though this superior right is not exclusive, and does not prevent others from driving or passing across or along its tracks at any place or time, when by so doing it will not materially interfere with the progress of the cars.

ID.—PASSAGE OF CARS—DUTY OF CITIZEN.—It is the duty of the citizen, whether on foot or in vehicles, to give unobstructed passage to the cars, which cannot turn out or leave the track, and which are operated by companies chartered, presumably, for the convenience of the public.

APPEAL from an order of the Superior Court of the City and County of San Francisco granting a new trial. JOHN HUNT, Judge.

The facts are stated in the opinion.

*Frank Shay*, and *George W. Baker*, for Appellant.

There was nothing in the situation to indicate to defendant's gripman that plaintiff, being in a safe place between the north and south track, would step backward upon the south track at a moment when the car was perilously close to her, and he had a right to presume that she would remain where she was. (2 Wood's Railway Law, 1264, 1267, et seq; *Moore* v. *Philadelphia etc. R. R. Co.*, 108 Pa. St. 349; *Holmes* v. *Southern Pac. Ry. Co.*, 97 Cal. 161, 168.) It was plaintiff's duty to exercise due care, and the exercise of due care required her to know whether or not defendant's car was approaching the place near which she was standing, and to know whether or not it was safe for her to step upon the south track of defendant's railroad before she made such an attempt. (*Holmes* v. *Southern Pac. Ry. Co., supra; Trousclair* v. *Pacific Coast S. S. Co.*, 80 Cal. 521; *Baltimore etc. R. R. Co.* v. *Depew*, 40 Ohio St. 121; *Pittsburgh etc. Ry. Co.* v. *Collins*, 87 Pa. St. 405; 30 Am. Rep. 371; *Baltimore etc. R. R. Co.* v. *Whitacre*, 35 Ohio St. 627.) As the facts were undisputed, the question of negligence was one of law for the court, and not one of fact to be determined by the jury. (*Glascock* v. *Central Pac. R. R. Co.*, 73 Cal. 137; *Trousclair* v. *Pacific Coast S. S. Co., supra; Holmes* v. *Southern Pac. Ry. Co., supra; O'Brien* v. *McGlinchy*, 68 Me. 552; *Chicago etc. Ry. Co.* v. *Davis*, 53 Fed. Rep. 61; *Bunt* v. *Sierra Butte etc. Co.*, 138 U. S. 483; *Railroad Co.* v. *Jones*, 95 U. S. 443; *Goodlett* v. *Louisville R. R. Co.*, 122 U. S. 411; *Cunningham* v. *Chicago etc. R. R. Co.*, 17 Fed. Rep. 882, 886; *Schofield* v. *Chicago etc. Ry. Co.*, 114 U. S. 616; *Flemming* v. *Western Pac. R. R. Co.*, 49 Cal. 257; *Pittsburg etc. R. R. Co.* v. *McClurg*, 56 Pa. St. 294; *Beisiegel* v. *New York Cent. R. R. Co.*, 40 N. Y. 9; *Fernandes* v. *Sacramento City R. R. Co.*, 52 Cal. 49.)

*C. M. Jennings*, for Respondent.

A motion for a new trial is addressed to the sound legal discretion of the court (*Breckenridge* v. *Crocker*, 68

Cal. 403, 404); and an order granting it will not be disturbed unless there is a manifest abuse of that discretion, if it can be justified on any of the grounds on which the motion was made. (*Bennett* v. *Hobro*, 72 Cal. 179; *Sharp* v. *Hoffman*, 79 Cal. 407; *Townsend* v. *Briggs*, 88 Cal. 232; *Bjorman* v. *Fort Bragg etc. Co.*, 92 Cal. 501; *Blum* v. *McHugh*, 92 Cal. 497, 498.) Nonsuit should not be granted unless there is no evidence, or a mere scintilla of evidence wholly insufficient for the consideration of the jury. (*Wilson* v. *Southern Pac. R. R. Co.*, 62 Cal. 172; *Franklin* v. *Southern Cal. Motor Road Co.*, 85 Cal. 70; *Schierhold* v. *North Beach etc. R. R. Co.*, 40 Cal. 453; *Gardiner* v. *Schmaelzle*, 47 Cal. 590; 3 Lawson on Personal Rights, 2153; *City Ry. Co.* v. *Lee*, 50 N. J. L. 435; 7 Am. St. Rep. 798; *Railroad Co.* v. *Stout*, 17 Wall. 657.) He who last has a clear opportunity of avoiding the accident, notwithstanding the negligence of his opponent, is considered solely responsible. (*Esrey* v. *Southern Pac. Co.*, 103 Cal. 541, 545.) Persons standing on the track are not trespassers, and their failure to look up and down the track before crossing is not conclusive evidence of contributory negligence, but is only a circumstance for the jury. (Beach on Contributory Negligence, 300; *Williams* v. *Grealy*, 112 Mass. 79; *Chicago City Ry. Co.* v. *Robinson*, 127 Ill. 9; 11 Am. St. Rep. 87; 1 Thompson on Negligence, 399; *Lynam* v. *Union Ry. Co.*, 114 Mass. 83; *Mentz* v. *Second Avenue R. R. Co.*, 3 Abb. App. Dec. 274; *Driscoll* v. *Market Street Cable Ry. Co.*, 97 Cal. 566; 33 Am. St. Rep 203; *Winters* v. *Kansas City Ry. Co.*, 99 Mo. 509; 17 Am. St. Rep. 591.) If there was time to stop, and defendant did not, it is liable. (*Needham* v. *San Francisco etc. Ry. Co.*, 37 Cal. 422; *Schierhold* v. *North Beach etc. Ry. Co.*, *supra; Shea* v. *Potrero etc. R. R. Co.*, 44 Cal. 428; *Meeks* v. *Southern Pac. R. R. Co.*, 56 Cal. 518–21; 38 Am. Rep. 67; *Strong* v. *Sacramento etc. R. R. Co.*, 61 Cal. 329; *Swain* v. *Fourteenth Street R. R. Co.*, 93 Cal. 184; *Cross* v. *California Street Ry. Co.*, 102 Cal. 313; *Esrey* v. *Southern Pac. Co.*, *supra.*)

SEARLS, C.—This is an appeal by the defendant from an order of the court granting a new trial. The action is brought to recover damages for personal injuries received by plaintiff by coming in contact with a moving cable-car, upon the Market street cable road of the defendant. At the trial in the court below, the court granted a nonsuit upon motion of the defendant; and the propriety of this action was the question involved in the motion for a new trial.

The plaintiff, a woman at the age of sixty-six years, in the possession of all her natural faculties, but apparently unfamiliar with cable-cars, being at the Russ House in San Francisco, was invited, on the afternoon of July 19, 1892, by her friend, Dr. George L. Fitch, to take a ride upon the Castro street cars. Pursuant to this invitation the plaintiff, in company with the doctor, proceeded to Market street, up the northerly side of that street to or near a crossing which crosses the street at right angles from the northerly entrance of the Palace Hotel. Plaintiff desired to ride upon the outside. A west-bound Castro street cable-car of defendant was approaching, and, as the seats thereof on the northerly side seemed occupied, while the front seat on the southerly side was vacant, they crossed over the north track upon which their car was approaching, and stood in the space between the two tracks, to do which there was sufficient room. Plaintiff's escort faced the east, and signaled the Castro street car to stop, which it did. Plaintiff, in the mean time, intent upon the approaching west-bound car, failed to see an east-bound car upon the other or southern track, and unconsciously, and without looking, stepped back upon that track, and was struck by an east-bound street cable-car, knocked down, and severely injured.

That plaintiff was guilty of negligence in stepping backward upon the track without noticing an approaching car upon that track some ten feet distant, and in plain view, must, we think, be conceded. Whether it was such contributory negligence as in law will pre-

clude a recovery, and whether it warranted a nonsuit, we will consider later.

The question arises, Was the defendant guilty of such negligence, through the failure of its servants to stop the car which produced the injury, as to render it liable? Or, rather, was the evidence of defendant's negligence such that the question ought to have been submitted to the jury for its determination?

When plaintiff stepped upon the track of the approaching car, and stood with her back to it, as the evidence shows her to have done, and apparently unconscious of danger, and the servants of defendant in charge of such car saw her, and became aware of her danger, as is shown to have been the case by their warning cries to her, it became, and was, their duty to exercise all reasonable care to protect her from injury.

Defendant's cars on the Market street system are provided with two brakes—one, a wooden shoe, which is pressed upon the track by a foot lever, and the other is operated by a hand lever, and acts upon the wheels of the car.

H. Stewart, a witness for plaintiff, was gripman upon the west-bound Castro car upon which plaintiff was about to take passage. His opportunity for observation seems to have been good. He saw plaintiff step upon the south track, and judged the east-bound car was from ten to fifteen feet away, and not running at over half speed; "Not that, I think; about one-quarter, I should think." In answer to a question by the court, he said: "I cannot measure exactly how far the front of the dummy was from plaintiff when she stepped upon the track; I judge about ten feet, maybe; I cannot say exactly." The maximum speed of the Market street cable-cars is eight miles an hour; hence, if the car was moving at half speed, it moved four miles per hour, and if at one-quarter speed, at the rate of two miles per hour.

The grip and brakes of the car doing the injury were managed by a "student," that is, by a man who was, and

for eight days had been, learning the business. Behind him stood his instructor, an experienced gripman, who directed and aided him when deemed necessary. The brakes were applied and the car was stopped just as it struck the plaintiff. "It did not run much over a foot after it struck her."

This witness was of opinion that at that point and at the given rate of speed of the car, fifteen feet was as short a distance as a car could be reasonably stopped. He added: "They did stop this car at the speed at which it was going within one or two feet after it struck plaintiff; I don't know whether they could have stopped it within that space just before it struck her or not; if they had time, and knew that she would step backward on the track, I suppose they could."

Another witness for plaintiff, Thomas Moran, a gripman of nine years' experience, seven years of which was spent on the Market street system, thought that a car going east at full speed, in front of the Palace Hotel, under favorable circumstances could be stopped in four or five feet, and when at half speed in about three feet.

Still another witness, a gripman formerly employed on Market street, testified that on a dry track and car in perfect order he had stopped a car going east in front of the Palace Hotel in six feet—at other times it takes ten to fifteen feet, depending upon the track. This was when running at full speed. At half speed could stop in six feet. He thought it would take a second or more to let the grip off and put on the brake.

The foregoing is believed to contain a fair statement of the substance of the evidence upon the points of negligence. The experts speak either from memory or from their judgment, and do not profess to be mathematically correct. That they are not precisely correct is apparent when we realize that a car, in running eight miles to the hour, covers eleven and eleven twenty-fifths feet per second, and if it takes one second to throw off the grip and apply the brakes, that distance must be traversed before they act in checking the momentum of the car.

The fact probably is that a prudent gripman, upon seeing, say a vehicle upon his track, while he expects it to leave his course, yet handles his brakes as a matter of precaution, and almost imperceptibly loosens his grip and slows down; if the obstruction does not vacate the track, forewarned and forearmed he stops in a brief space, while if the same obstacle had unexpectedly dropped upon the track a car's length away, a collision would have been probable. The record shows that in granting a nonsuit the court gave the following reasons for its actions: "Conceding that the gripman might have stopped the car in six feet, that the plaintiff was standing only ten or fifteen feet away, and that he was only going two miles an hour, assuming all that, still the plaintiff did not exercise ordinary care to prevent it; therefore the motion for nonsuit is granted."

The solution of two questions is essential to a decision of the case: 1. Was the plaintiff guilty of such contributory negligence as in law will defeat her recovery? 2. If the first question be answered in the affirmative, then was the defendant guilty of such willful and wanton negligence as entitled her to recover, notwithstanding her own contributory negligence?

Market street is an open public street of the city and county of San Francisco, over which vehicles of great variety and pedestrians are accustomed to pass and repass in great numbers and at all times, and the vicinity of the Palace Hotel is one of its most frequented portions.

In the earlier cases touching the relative rights of street-cars, private vehicles, and foot passengers upon the public streets, a great diversity of opinion was expressed. Sometimes it was held that upon that portion of the streets covered by the tracks their rights were equal, and that drivers of ordinary vehicles might, with impunity and from mere convenience, drive across and along the track at any rate of speed they chose, while in other cases it was held that the right of way of the street-car was practically exclusive, and that any use of the

tracks not actually necessary or for the purpose of a crossing was a trespass, and in case of a collision was such negligence on the part of a private driver as would absolve the street-car company from liability for the consequences of a resulting accident, unless it was attributable to malice or sheer recklessness.

Out of this medley of decisions the courts, profiting by time and experience, and in some instances aided by legislation, have gradually evolved the theory: 1. That the street-car has, and from the necessities of the case must have, a right of way upon that portion of the street upon which alone it can travel, and which it cannot leave, paramount to that of persons and ordinary vehicles; 2. That this superior right is not exclusive, and does not prevent others from driving or passing across or along its tracks at any place or time, when by so doing it will not materially interfere with the progress of its cars. In other words, the better right is not an exclusive right, and can only be enforced against those who needlessly impose obstacles to its force and unrestricted exercise. (*Shea* v. *Potrero etc. R. R. Co.*, 44 Cal. 414; *Chicago etc. Ry. Co.* v. *Ingraham*, 131 Ill. 659; *Rend* v. *Chicago etc. Ry. Co.*, 8 Ill. App. 517; Booth on Street Railway Law, sec. 303, and cases there cited.)

In the case of ordinary steam railroads the companies are usually the exclusive owners of their rights of way, and have, except at crossings, the exclusive right to the use of their tracks at all times and places. He who without permission, express or implied, intrudes thereon is a trespasser, to whom they owe no duty beyond refraining from doing him a willful injury. Not so with the citizen who enters upon the track of a street railway. These last are used in common by their cars and the traveling public.

The mere fact that an individual is upon a street-car track in the heart of a city where men are wont to come and go, in itself and divested of all other circumstances, raises no presumption of law, and is not even evidence of negligence. It is the time, place, and surrounding

circumstances which afford the evidence of negligence in the case of footmen upon the track.

The common use is necessary in cities. True, the railway companies have certain superior rights. Their cars have the right of way, and it is the duty of the citizen, whether on foot or in vehicles, to give unobstructed passage to the cars. This results from two reasons: 1. That the car cannot turn out or leave the track, while the vehicle or passenger can; 2. These companies are chartered, nominally at least, for the convenience of the public.

Their duties to that public require them to move with regularity and with all reasonable celerity. Manifestly, this cannot be accomplished if they must pause or give way to every foot passenger or vehicle whose convenience or pleasure may prompt an obstruction of the way. The latter can cross and pass elsewhere; the former cannot. The duties of the car companies and of the public are each enhanced by the peculiar conditions. The former must see to it that their servants are on the alert, not only at street crossings, but everywhere upon the tracks, to see that citizens are not run down and injured.

The citizen, if upon the track, must leave it when the car approaches; if about to cross it he must use his senses of sight and hearing before stepping on the track, to ascertain whether a car is approaching, and, in the absence of some well-known custom or regulation at crossings which renders such a precaution on his part unnecessary, he is guilty of negligence if he fails to look before he passes upon the track, and if all the facts plainly and inevitably point to such negligence, leaving no room for argument or doubt, it is negligence in law.

The plaintiff was standing between the tracks, with ample space to insure her safety. With an approaching car upon the other track in plain view, but ten to fifteen feet away, and without, so far as appears, any circumstances of excitement to render her unjudging, and with-

out looking, as it was her duty to do, she stepped in front of the approaching car and was injured.

This was contributory negligence. If it was not negligence in law, we can conceive no case that is, short of a willful performance of the same or a similar act. (*Davenport* v. *Brooklyn City R. R. Co.*, 100 N. Y. 632; *Kelly* v. *Hendrie*, 26 Mich. 255; *Scott* v. *Third Avenue R. R. Co.*, 59 Hun, 456; *Harnett* v. *Bleecker Street etc. R. R. Co.*, 49 N. Y. Super. Ct. 185; *Fenton* v. *Second Avenue R. R. Co.*, 126 N. Y. 625; *Buzby* v. *Philadelphia Traction Co.*, 126 Pa. St. 559; 12 Am. St. Rep. 919.)

Booth on Street Railway Law, after discussing the doctrine and the cases touching the duty of persons to look before passing upon or over the tracks of street railways, at section 315, uses the following language: "Although the law on this point awaits further elucidation and development by the courts, the decisions thus far rendered, both in the United States and Canada, tend to establish the rule, at least with reference to electric and cable railways, that the failure to look or listen before attempting to cross, where such precautions would prevent collision, is in law such negligence as will defeat a recovery in an action for damages by the person so injured." That the negligence of plaintiff directly contributed to and was the proximate cause of her injury is too plain to call for discussion.

Upon the proposition as to the defendant having been guilty of willful negligence it is only necessary to say that the evidence shows that the servants of defendant tried in good faith to stop the car, and did stop it within one foot of the point of collision with plaintiff. We are of opinion the motion for a nonsuit was properly granted, and as the question presented was one of law, and not one in which the court below was clothed with a discretion which we are called upon to treat with latitude, we think the order granting a new trial was erroneous. It is said that the motion for a new trial was granted upon the authority of *Esrey* v. *Southern Pac. Co.*, 103 Cal. 541, and *Cross* v. *California Street etc. Ry. Co.*, 102

Cal. 313, cases which were reported subsequently to the nonsuit herein. We fail to recognize in those cases any conflict with the theory upon which the nonsuit was granted.

In *Esrey* v. *Southern Pac. Co., supra,* the plaintiff was clearly guilty of contributory negligence in placing herself in a dangerous position between the track of defendant and a platform five feet high. With full knowledge of her perilous situation defendant's train was backed down in part past her, an additional and wider car attached and the train signaled to go forward, which it did, crushing her against the platform, and when thus crushed she had fallen to the ground, the servant of defendant again signaled the train to go ahead. All the circumstances showed such wanton recklessness on the part of defendant's servants, such an utter disregard of the safety and life of the plaintiff, as to constitute willful and wanton injury, which entitled a party injured to recover notwithstanding her own previous contributory negligence.

*Cross* v. *California Street etc. Ry. Co., supra,* was an action to recover damages against a street railway company. It appeared that plaintiff, a teamster, was engaged in hauling a heavy load of lumber down a steep grade on California street, and had secured his wheel with a lock chain, which broke, and, without fixing it, plaintiff drove on zigzagging down the hill, walking beside the wagon, when defendant's car came down the hill, struck the hind wheel of plaintiff's wagon, swung it around and squeezed plaintiff between his wagon and the dummy, to his injury.

It was insisted by appellant that plaintiff was guilty of contributory negligence, and that a nonsuit should have been granted in the court below: 1. In continuing down the steep grade with a heavy load after his lock chain broke; and 2. That plaintiff had placed himself upon defendant's car track without first looking if a car was coming upon him.

This court held that the nonsuit was properly denied,

and, among other things, said: "It cannot be said it was negligence in law to attempt to descend the hill without a lock-chain."

The propriety of this conclusion becomes apparent when we reflect that it depended upon the strength of the team, the weight of the load, and the angle of the grade, factors upon which no court could base a conclusion of law, but which presented a compound question of law and fact to be presented to the jury under proper instructions.

This again was supplemented with evidence that the team could and did safely convey the load down the hill after the collision, without a lock chain. It further appeared that plaintiff could see the track of defendant for one hundred feet, and it was unobstructed, etc.

The case is not analogous to the one at bar. See Beach on Contributory Negligence, section 452, where, after discussing the rule requiring one who crosses a railroad track to be on his guard, etc., it is said: "But as the law now stands the standard is fixed. One must look up and down the track. Anything short of that is negligence." (*Hager* v. *Southern Pac. Co.*, 98 Cal. 310.)

We recommend that the order granting a new trial be reversed, and that the court below be directed to enter judgment in favor of defendant upon the order granting a nonsuit.

Haynes, C., and Britt, C., concurred.

For the reasons given in the foregoing opinion the order granting a new trial is reversed and the court below directed to enter judgment in favor of defendant upon the order granting a nonsuit.

Harrison, J., Garoutte, J., Van Fleet, J.

Hearing in Bank denied.