[S. F. No. 7251. Department One.—April 20, 1917.]

ELSA U. ARNOLD et al., Respondents, v. SAN FRAN-
CISCO–OAKLAND TERMINAL RAILWAYS, Ap-
pellant.

NEGLIGENCE—COLLISION BETWEEN AUTOMOBILE AND STREET-CAR—CON-
TRIBUTORY NEGLIGENCE OF DECEASED—EVIDENCE.—In an action for
damages for death from a collision between an automobile which
the deceased was driving and an electric street-car, the contributory
negligence of the deceased was such as to bar recovery, where it is
shown that he was thirty-six years of age, mentally and physically
sound, in possession of his usual faculties, familiar with the condi-
tions existing at the crossing where the accident happened, and
that he saw the car approaching while he was forty feet from the
track and could have turned in two directions or stopped and
avoided danger, but instead attempted to cross the track ahead of
the car.

ID.—DRIVING OF AUTOMOBILE—LACK OF ORDINARY SKILL—NEGLIGENCE.—
If a person does not possess ordinary skill in driving an automobile,
it is lack of ordinary care to undertake to drive it in the vicinity
of a dangerous street railroad crossing, and where injury results,
recovery is barred by his negligence.

ID.—CLOSE PROXIMITY OF PASSING CARS—NEGLIGENCE NOT EXCUSED.—
In such an action it cannot be argued that deceased was excused
in driving his automobile across the track because he was surprised
by the close proximity of the special car with which he collided to
another car which had just passed, in view of the fact that he saw
the special car when he was forty feet away from the track, and
with due care could have avoided the injury.

ID.—STREET RAILWAY CROSSINGS—DUTY OF AUTOMOBILE DRIVERS—
RIGHT OF WAY.—It is the duty of an automobile driver on approach-
ing a street railway crossing to give way to a street-car about to
pass at the same time, if necessary in order to avoid a collision,

CLXXV Cal.—1 　　　　(1)

and a street railway motorman is not required to presume that such a driver will fail in his duty in such respect.

ID.—APPLICABILITY OF LAST CLEAR CHANCE DOCTRINE.—The last clear chance doctrine is applicable where the injured party by his own negligence has placed himself in a position of danger from which he cannot extricate himself, or of which he is obviously unconscious, and the defendant, seeing or knowing his peril, or seeing or knowing facts from which a reasonable man would believe him to be in peril, and being able by the use of ordinary care to avoid injuring the plaintiff in his perilous position, fails to use such care and thereby causes injury.

APPEAL from a judgment of the Superior Court of Contra Costa County, and from an order denying a new trial. H. D. Gregory, Judge Presiding.

The facts are stated in the opinion of the court.

Geo. W. Mordecai, W. H. Smith, A. L. Whittle, Chapman & Trefethen, and Morrison, Dunne & Brobeck, for Appellant.

Jay Monroe Latimer, and J. E. Pemberton, for Respondents.

SHAW, J.—On the 23d of April, 1913, Joseph C. Arnold was killed by a collision between an automobile, which at the time he was driving, and a car run by the defendant on its San Pablo Avenue line. The plaintiffs, being the widow and children of Arnold, began this action to recover the damages which they have suffered from his death, alleging that the collision was caused by the negligence of the defendant. The cause was tried by a jury, a verdict was returned for the plaintiffs in the sum of thirty thousand dollars and judgment was given accordingly. The defendant appeals from the judgment and from an order denying its motion for a new trial.

For the purposes of our consideration of the case it will be assumed that the evidence was sufficient to sustain a finding that the negligence of the defendant was an operative cause of the collision and injury complained of. The defendant claims that the evidence showed, as matter of law, that the negligence of Arnold contributed to the injury which caused his death.

The evidence as to the controlling facts on this question is not substantially conflicting. The defendant was maintaining and operating a double track street-car line on San Pablo

Avenue running from Oakland to Richmond. Schmidt Lane, a street sixty feet wide, runs from the east into San Pablo Avenue at a point in Contra Costa County about a mile north of the Alameda County line. It does not extend west beyond San Pablo Avenue. The western track is used for southbound cars and the eastern track for north-bound cars. Its grade for about three hundred feet south of the junction ascends toward the north one foot in a hundred. At the southeastern corner of the junction there is a two-story building, known as Timm's saloon, which obscured the view from the lane southward. For a distance of about five hundred feet east from the junction other objects obscured the view from the lane southward. Schmidt Lane descends toward the avenue for that distance at a grade of about one foot in a hundred. The part of San Pablo Avenue south of Schmidt Lane and east of the street-car tracks, including the sidewalk, was 31.4 feet wide. North of Schmidt Lane it was fifty feet wide. In front of Timm's saloon and extending around the corner was an awning supported by five posts, one on the north end and the others on the avenue front. This occupied thirteen feet of the avenue leaving eighteen feet between it and the street-car tracks. It projected eight feet north of the south property line of the lane. The ground all about was practically level and automobiles could travel the avenue either to the north or south. Arnold was thirty-six years old, mentally and physically sound, and in possession of his usual faculties at the time. He was familiar with the conditions at the junction. Driving westerly on Schmidt Lane at about the center thereof he approached the junction at a speed of about ten miles per hour intending to cross the tracks and turn south on the avenue on the west side of the tracks. As he reached a point in Schmidt Lane from forty-five to fifty-five feet east of the eastern car-track he saw a north-bound car coming on the track at a distance from sixty-five to eighty-five feet south of the intersection of the projected line of Schmidt Lane with the car-tracks. Its speed was estimated at from twelve to twenty-five miles per hour. The automobile was a short, five-passenger machine, occupied by himself and three other persons, eleven feet in length over all and weighing about sixteen hundred pounds. The evidence was that with the use of ordinary care and skill it could be stopped within a space of fifteen or twenty feet when going at the rate he was traveling

and that a person of ordinary skill, even when going much faster than he was going at the time, with ordinary care, could have turned from the lane, either to the north or to the south, on San Pablo Avenue east of the car-tracks without coming in dangerous proximity to a car passing thereon. Upon seeing the car Arnold first swerved slightly to the left or south and then swerved slightly to the north and finally attempted to cross the tracks in front of the coming car. The result was that he collided with the car at a point about opposite the center of Schmidt Lane.

The bare statement of the facts proves beyond question that the lack of ordinary care or skill on the part of Arnold was a directly contributing cause of his injury. He saw the car coming when he was not nearer than forty feet from the tracks. He had abundant time and space to turn to the south, or to the north, or to stop and avoid danger, if he had possessed ordinary skill and had used ordinary care. No other conclusion follows than that by the lack of ordinary skill or ordinary care he failed to take either course. The only thing that will excuse him of lack of ordinary care is the admission that he did not possess ordinary skill. If the latter be true, it was lack of ordinary care for him to trust himself to drive an automobile in a place of that kind. In either case his contributory negligence is established.

The argument that Arnold was excusable because he was surprised by the close proximity of the special car to a car that had just passed the junction, and that he was not expecting another north-bound car so soon, is deprived of all force by the fact that he actually saw the special car in ample time to have avoided it. To say that the unexpected appearance of a car on the track was sufficient to startle him so as to deprive him of the use of his reason and senses is to convict him of being incompetent to drive an automobile at all on the public streets. There is no evidence that he was unskillful in driving an automobile. But, as we have said, if he was unskillful it was negligence for him to undertake to drive it at such a place. The evidence proves beyond doubt that he saw the car in time to have avoided it with the use of ordinary care.

The evidence does not sustain the plaintiff's contention that the defendant is liable under the doctrine of the last clear chance. This doctrine applies where the injured party by his own negligence has placed himself in a position of danger

from which he cannot extricate himself, or of which he is obviously unconscious, and the defendant, seeing or knowing his peril or seeing or knowing facts from which a reasonable man would believe him to be in peril, and being able by the use of ordinary care to avoid injuring the plaintiff in his perilous position, fails to use such care and thereby causes the injury. (*Thompson* v. *Los Angeles etc. Co.*, 165 Cal. 748, 755, [134 Pac. 709] ; *O'Brien* v. *McGlinchy*, 68 Me. 552; *Holmes* v. *South Pacific Coast Ry. Co.*, 97 Cal. 161, 169, [31 Pac. 834] ; *Sego* v. *Southern Pacific Co.*, 137 Cal. 405, 407, [70 Pac. 279] ; *St. Louis etc. Co.* v. *Schumacher*, 152 U. S. 77, [38 L. Ed. 361, 14 Sup. Ct. Rep. 479] ; *Illinois Central Ry. Co.* v. *Ackerman*, 144 Fed. 959, [76 C. C. A. 13] ; *Denver City Tramway Co.* v. *Cobb*, 164 Fed. 41, [90 C. C. A. 459] ; *Green* v. *Los Angeles etc. Co.*, 143 Cal. 31, 41, [101 Am. St. Rep. 68, 76 Pac. 719].)

"A street-car cannot go upon the street except upon its rails and hence it has the better right to that space, to which others must yield when necessary." (*Scott* v. *San Bernardino etc. Co.*, 152 Cal. 604, 610, [93 Pac. 677] ; *Clark* v. *Bennett*, 123 Cal. 275, 279, [55 Pac. 908] ; *Bailey* v. *Market Street Ry. Co.*, 110 Cal. 320, 327, [42 Pac. 914].) It was the duty of Arnold, upon approaching the crossing, to give way to a car of the defendant which was about to pass at the same time, if necessary to avoid a collision, since he could give way while it could not. The defendant's motorman was not required to presume that Arnold would not perform this duty. He had the right to presume that Arnold would stop or turn aside, until the conduct of Arnold was such as should reasonably have led him to apprehend the contrary. So long as it appeared that Arnold, with reasonable care, could stop his automobile, or turn it to one side or the other, so as to avoid a collision, and there were no obvious indications that he might not do so, the motorman had the right to assume that he would do so and upon that assumption to proceed along the track. (*Thompson* v. *Los Angeles etc. Co.*, 165 Cal. 748, [134 Pac. 709].) He could have stopped the automobile, or turned it aside, in safety if he had begun to do so when he was twenty-five feet away. He displayed no obvious intention to cross the track ahead of the car until the moment when, after swerving to the south, apparently in an attempt to pass south to the eastward of the tracks, he again swerved

to the north, apparently with the purpose of turning northerly east of the track, or of passing in front of the street-car. The latter swerve did not occur until Arnold had proceeded beyond the east property line of San Pablo Avenue several feet. The evidence indicates that it took place when he arrived opposite the corner of the awning, which was 13 feet west of the property line and 18.4 feet east of the car-track. The motorman testified that as soon as he saw Arnold coming out of Schmidt Lane he did everything that could be done to stop the car, and that he stopped it as quickly as it could have been stopped after that moment. This indicates that he started to stop the car even before he had reasonable cause to believe that Arnold would attempt to cross the track in front of the car. There is no substantial evidence contradictory of this. The doctrine of the last clear chance could not become applicable until Arnold's negligence had brought him so close to the track that he could not by ordinary care either stop or turn aside so as to avoid a collision, or until his conduct showed that he intended to hazard a crossing ahead of the car, and when these conditions became apparent the utmost care by either party would have been unavailing to prevent the accident.

There are no other errors complained of which in our opinion require consideration.

The judgment and order are reversed.

Sloss, J., and Lawlor, J., concurred.

Hearing in Bank denied.