[Civ. No. 10524. First Appellate District, Division One.—December 19, 1938.]

MARY McHUGH, Appellant, v. MARKET STREET RAILWAY COMPANY (a Corporation) et al., Respondents.

William M. Malone and Raymond L. Sullivan for Appellant.

Wm. M. Abbott, Cyril Appel and Ivores R. Dains for Respondents.

THE COURT.—An electric car operated by the defendant company and a Ford roadster driven by plaintiff collided at the intersection of Eighteenth Avenue and Balboa Street in San Francisco, about 5 o'clock in the afternoon. Riding with plaintiff were David Whang, the owner of the roadster, and plaintiff's cousin, Virginia O'Donnell, fourteen years of age. As the result of the collision plaintiff and her cousin were injured, and the roadster was more or less wrecked. Thereafter plaintiff brought this action against the street car company and its motorman to recover damages for the personal injuries she sustained. The trial proceeded before a jury, and ended in a judgment of nonsuit, from which plaintiff has taken this appeal.

At the time of the accident the roadster was being driven northerly along Eighteenth Avenue, which is forty feet wide between curbs, and intersects Balboa Street at right angles. Balboa Street is fifty feet wide between curbs, and along the center thereof are laid the double tracks of the defendant company. The approach of Balboa Street to said intersection from the west is on an up-grade of 8 1/3 per cent, and the street car entered the intersection from that side, that is, it was eastbound. There were no stop or arterial signs on any of the corners of the intersection, and in accordance with a rule of the defendant company its eastbound cars did not stop at that intersection to receive or discharge passengers. The roadster entered the intersection just a second or two before the street car, and the operator of each vehicle saw the approach of the other. As each vehicle entered the intersection, it slowed down to a speed of twelve or thirteen miles an hour, but neither was brought to a stop before the impact, which took place just as the front wheels of the roadster reached the farther or northerly rail of the eastbound track, the street car striking the roadster broadside and shoving it along the track for a considerable distance.

The motorman was called as a witness by plaintiff subject to the provisions of section 2055 of the Code of Civil Procedure, and as to the movements of the street car he testified that it continued to slow down after it entered the intersec-

tion, so that at the time of the impact it was traveling at a speed of only seven or eight miles an hour. But in contradiction thereof plaintiff and another witness testified that after the street car entered the intersection, its speed was accelerated to twenty or twenty-five miles an hour, and that it was traveling at that rate of speed at the time of the impact, which, if true, was in violation of the fifteen mile an hour limit fixed by law for traversing intersections within the city. Defendants concede, therefore, that in that state of the evidence it would have been sufficient to support a finding that the street car was being negligently operated; but they contend that the facts disclosed by plaintiff's own testimony as to the manner in which she attempted to cross in front of the street car established that she was guilty of contributory negligence as a matter of law, and that therefore the nonsuit was properly granted. ■ We are of the opinion that defendants' contention must be sustained.

In this regard she testified that she was familiar with the intersection, having frequently visited the home of her aunt (Virginia O'Donnell's mother) who lived within a block thereof, and that she knew from experience that because of the prevailing "non-stop" street car rule the eastbound cars did not stop at that intersection; that after driving into the intersection, she was fully aware of the approach of the oncoming street car and observed that it was proceeding across the intersection without stopping; that she saw it first when it was twenty-five feet west of the west property line, and again as it crossed said property line; that on this second observation she watched its progress until after it had crossed the west curb line of Eighteenth Avenue and started across the intersection. Continuing, she testified that at that time the street car was only twenty-eight feet away, traveling toward her at a speed of thirteen miles an hour, and that the roadster was still seven or eight feet distant from the first rail of the eastbound track; and she admits that at that time she could have easily stopped the roadster within two or three feet and let the street car pass in front of her. However, she made no attempt at any time to stop or even slow down. On the contrary, at that particular moment, so she testified, she turned her head, looked the other way, and continued to drive forward at the same rate of speed of ten or twelve

miles an hour, thereby placing the roadster and its occupants · squarely on the eastbound track in the pathway of the oncoming street car. After the roadster was astride of the track she again looked toward the street car, but it was then only a few feet away, traveling toward her at a speed which she estimated to be twenty miles an hour, and the crash was inevitable.

The foregoing testimony was amply sufficient, in our opinion, to justify the trial court in holding that plaintiff failed to exercise ordinary care for her own safety. ██ As held in substance in the cases hereinafter cited, where a pedestrian or the driver of a motor vehicle, after being aware of the approach of an oncoming electric car which is within such a distance and going at such an apparent rate of speed as to cause a reasonable apprehension of danger, closes his eyes to the dangers necessarily involved and blindly attempts to cross in front of it, thus placing himself in the pathway of the oncoming car, he is guilty of negligence as a matter of law. (*New York Lubricating Oil Co.* v. *United Railroads,* 191 Cal. 96 [215 Pac. 72]; *Arnold* v. *San Francisco-Oakland T. Rys.,* 175 Cal. 1 [164 Pac. 798]; *Urbano* v. *Market Street Ry. Co.,* 8 Cal. App. (2d) 22 [46 Pac. (2d) 817]; *Gore* v. *Market St. Ry. Co.,* 4 Cal. App. (2d) 154 [48 Pac. (2d) 2].)

And clearly this was such a case, because as shown by plaintiff's own testimony, despite the fact that she knew that the street car was only twenty-eight feet away and approaching at a speed of thirteen miles an hour, and that the roadster was still seven or eight feet distant from the track and could have been easily stopped within two or three feet, she turned her head, looked the other way, and blindly attempted to cross the track in front of the oncoming car. Obviously, in that situation, the street car was within such a distance and going at such a rate of speed as to cause a reasonable apprehension of danger. In other words, it was reasonably apparent from the location of the vehicles and the speed at which they were traveling at the time she turned her head and looked the other way, that they would reach the crossing point about the same time, or at best that the roadster would be able to clear the farther rail of the eastbound track by only a split-second ahead of the street car; and under such circumstances, due care and prudence on plaintiff's part re-

quired her to continue to be watchful of its approach until the danger therefrom was obviated, and to stop the roadster, if necessary to avoid a collision, and give the street car the right of way. Manifestly, if she had exercised ordinary care in taking either of those precautions, there would have been no collision. As frequently said by the courts, while a street car has only an equal right with the traveling public to the use of the street whereon its tracks are built, still, since it cannot go upon the street except upon its rails it has a paramount right to that space to which others must yield whenever it is necessary to avoid a collision (*Scott* v. *San Bernardino Valley Traction Co.*, 152 Cal. 604 [93 Pac. 677] ; *Clark* v. *Bennett*, 123 Cal. 275 [55 Pac. 908] ; *Bailey* v. *Market Street C. Ry. Co.*, 110 Cal. 320 [42 Pac. 914] ; *Arnold* v. *San Francisco-Oakland T. Rys., supra*) ; and that where, as in the present case, the danger of crossing in front of an approaching street car is imminent, the driver of a motor vehicle is not justified in assuming that the speed of the street car will not be increased (*New York Lubricating Oil Co.* v. *United Railroads, supra*) ; nor under such circumstances is he to be excused by the fact that he looked once in the direction of the anticipated danger and then looked away (*Flores* v. *Los Angeles Ry. Corp.*, 15 Cal. App. (2d) 576 [59 Pac. (2d) 856], citing numerous authorities, including *Moss* v. *H. R. Boynton Co.*, 44 Cal. App. 474 [186 Pac. 631], and *Sheldon* v. *James*, 175 Cal. 474 [166 Pac. 8, 2 A. L. R. 1493]).

In arriving at the conclusion that the trial court's ruling should be sustained, we have borne in mind the well-settled rule that where the evidence is such that reasonable minds might well differ upon the question of contributory negligence, that issue should be submitted to the determination of the jury; and we have also examined the cases relied on by plaintiff in support of the contention she makes in that behalf. But we find no room for the application of that rule here, nor do we deem any of the cases cited by plaintiff here controlling because of the material difference in the factual situation thereof relating to the question of whether the oncoming car was close enough, and going at such an apparent rate of speed, as to cause a reasonable apprehension that it would be dangerous to cross in front of it.

■ Plaintiff further contends, however, that even though the evidence establishes that she was guilty of contributory negligence as a matter of law, the cause nevertheless should have been submitted to the jury on the issue of last clear chance. This contention is based mainly upon the testimony showing that the speed of the street car was increased after it entered the intersection, and a statement made by the motorman in giving his testimony to the effect that the roadster was within his view at all times after the street car entered the intersection, and he did not apply the brakes of the car until instantly before the vehicles collided. It is quite certain, however, that under the admitted facts of the present case the doctrine of the last clear chance is not available to plaintiff, for the reason that it has been specifically held that the doctrine has no application where by the exercise of ordinary care the plaintiff up to the very moment of the accident could have avoided it (*Palmer* v. *Tschudy,* 191 Cal. 696 [218 Pac. 36]; *Young* v. *Southern Pac. Co..* 189 Cal. 746 [210 Pac. 259]; 19 Cal. Jur., p. 658, and 8 Cal. Jur. Supp., p. 368, and cases cited therein); nor where the driver of an automobile is in no apparent peril until the very moment of the collision with the street car (*Read* v. *Pacific Elec. Ry.* Co., 185 Cal. 520 [197 Pac. 791].) In other words, if after a plaintiff is aware of the danger, and being able to escape it by the exercise of ordinary care, he neglects so to do, he cannot invoke the last clear chance to place the burden of the resulting loss upon the other party, because obviously, if both parties to an accident could by the exercise of ordinary care have avoided it, neither can be said to have had the last clear chance. (*Palmer* v. *Tschudy, supra; Arnold* v. *San Francisco-Oakland T. Rys., supra.*) In this regard the facts of the present case are no different from those of the Arnold case, *supra,* and in holding there that the doctrine of the last clear chance was not available the court said: ''It was the duty of Arnold, upon approaching the crossing, to give way to a car of the defendant which was about to pass at the same time, if necessary to avoid a collision, since he could give way while it could not. The defendant's motorman was not required to presume that Arnold would not perform this duty. He had the right to presume that Arnold would stop or turn aside, until the conduct of Arnold was such as should

reasonably have led him to apprehend the contrary. So long as it appeared that Arnold, with reasonable care, could stop his automobile, or turn it to one side or the other, so as to avoid a collision, and there were no obvious indications that he might not do so, the motorman had the right to assume that he would do so and upon that assumption to proceed along the track.'' (Citing *Thompson* v. *Los Angeles etc. Ry. Co.*, 165 Cal. 748 [134 Pac. 709].)

Nor are we able to agree with plaintiff's argument that the legal principles deducible from the cases of *New York Lubricating Oil Co.* v. *United Railroads, supra,* and *Arnold* v. *San Francisco-Oakland T. Rys., supra,* which have been here invoked are inapplicable merely because those cases involve collisions with suburban electric cars; for while the ''stop, look and listen'' rule governs in that class of cases and is not necessarily controlling in such a case as we have here, namely, a collision with a street car at an intersection within the municipal boundaries, it will be found that in both of the cases above mentioned the ''stop, look and listen'' rule was not the determining factor. In each of them, as here, the plaintiff saw the approaching street car but nevertheless attempted to cross in front of it. It follows, therefore, that the rules laid down in those cases relating to a situation of that kind apply with equal force to the present case.

The judgment is affirmed.