[Civ. No. 12318.   First Dist., Div. One.   June 17, 1943.]

AUGUST MAGNUSON, Appellant, v. MARKET STREET RAILWAY COMPANY (a Corporation) Respondent.

234

Philander B. Beadle and Samuel Vartan for Appellant.

Cyril Appel, Ivores R. Dains, George Liebermann and George E. Baglin for Respondent.

KNIGHT, J.—This action for damages arose out of a collision between a streetcar operated by the defendant company and a Ford coupé owned and driven by plaintiff. The motorman was joined as party defendant with the railway company, and they answered, denying plaintiff's allegations of negligence and alleging that the collision was proximately caused by plaintiff's carelessness and negligence, and that said carelessness and negligence proximately contributed thereto. The cause was tried by a jury, a verdict was returned in favor of defendants, and plaintiff appeals.

The accident occurred on a clear day during the noon hour on May 11, 1941, at the El Mirasol Place intersection of Sloat Boulevard in the suburban area of San Francisco, when plaintiff attempted to make a ''U'' turn in front of the streetcar, which was traveling in the same direction over the railway company's private right of way. The admitted facts show that plaintiff saw the approaching streetcar prior to and at the time he started to make the ''U'' turn in front of it, but failed to note the speed it was traveling; that he could have stopped his coupé within three feet at any time before reaching the track; and that notwithstanding he was fully aware of the oncoming car and could have avoided being struck by merely stopping his car he drove blindly into the pathway thereof. The streetcar weighed 28 tons, and shoved the coupé along the track for a short distance, but did not overturn it. As the result of the collision the coupé was damaged to the extent of $135 and plaintiff was injured. He suffered no cuts or lacerations, and was able to drive his coupé home, but it was afterwards ascertained that four ribs had been fractured and he sustained a shoulder injury.

█ Plaintiff concedes that the evidence sustains the im-

plied finding of the jury that he was guilty of negligence, but he contends as sole ground for reversal that the trial court erred in refusing to instruct the jury at his request upon the doctrine of the last clear chance. There is no merit in the appeal. The factual situation is identical in all material respects with those considered in *New York L. Oil Co.* v. *United Railroads,* 191 Cal. 96 [215 P. 72], and *Rasmussen* v. *Fresno Traction Co.,* 15 Cal.App.2d 356 [59 P.2d 617], wherein it was held that the doctrine of the last clear chance was not applicable, and the judgments in favor of the plaintiffs were reversed. Manifestly the law as laid down in those cases and by the authorities cited therein is determinative of the contentions made by plaintiff in furtherance of the present appeal.

Stated in greater detail, the essential facts of the present case are these: Sloat Boulevard is a long, straight main highway running westerly from Portola Drive to the Ocean Beach, on a slight down grade, and is divided down the center by the private right of way of the defendant company, over and along which are laid its double tracks. Palos Place and El Mirasol Place are intersecting streets from the north. They are about 200 or 250 feet apart, and cross the right of way, but do not extend beyond the south boundary of the boulevard. The boulevard is paved on both sides of the right of way and each side is divided into three vehicular traffic lanes, the north side being used for westbound traffic and the south side for eastbound traffic. The crossing over the right of way at the end of El Mirasol Place is paved, but the right of way is not. It is covered with ties, rock and gravel, and the level of the rails is slightly above the surrounding surface. The view to the east and to the west of the crossing is unobstructed for several thousand feet, and under the provisions of a municipal ordinance the streetcars are permitted to travel 45 miles an hour over and along the private right of way.

As the streetcar and the coupé traveled westerly toward the Ocean Beach the coupé was ahead of the streetcar and following the traffic lane closest to the company's private right of way; and the following is the substance of plaintiff's testimony in describing the accident: He stated that upon crossing Palos Place he decided to make a "U" turn at the next intersection (El Mirasol Place) which was about 200 or

250 feet ahead, and he slowed down to 10 or 15 miles an hour; that as he slowed down he looked back and saw the approaching streetcar, which he estimated was about two blocks behind him, but that he did not take note of its speed; that as he drew closer to the east curb line of El Mirasol Place he gave an arm signal, reduced his speed to five or seven miles an hour, shifted into second gear, and made a left turn to cross the tracks; that while making the turn he looked again and saw the approaching streetcar, which he estimated was then about a block behind him, but that again he failed to take note of its speed. The distance from the edge of the boulevard pavement where he made the turn to the nearest rail of the westbound track was less than eight feet, and plaintiff testified that he could have stopped his coupé at any time ''almost immediately''—''within a foot or two or three,'' but that without looking again to see how close the car was to the crossing he drove upon the westbound track; that when he was about a quarter way across the track he looked and saw the streetcar; that it was about 50 feet distant from him; that it was approaching the crossing at 40 or 45 miles an hour, and that he was still traveling in second gear; that the streetcar did not diminish its speed before the impact. The streetcar struck the coupé in the middle of the left side and plaintiff estimated that the streetcar was brought to a stop about 95 feet from the point of impact.

The motorman testified that the streetcar had been traveling 25 to 30 miles an hour; that when he neared the El Mirasol intersection he reduced the speed about 10 miles an hour, and that the streetcar was within 30 feet of the crossing when plaintiff started to make the left turn toward the track; and the evidence is undisputed that instantly upon seeing plaintiff turn off the boulevard toward the track the motorman used all available means to stop the car; that he ''slugged'' it (put it in reverse), but that it was impossible to stop it before it struck the coupé. The evidence further shows that as soon as the car was ''slugged'' it skidded along the track and according to the motorman's testimony was brought to a stop within a car length (48 feet) beyond the point of the collision. A police officer arrived at the scene of the accident just after it happened, and he testified that plaintiff told him at that time that he did not see the streetcar at all before it struck him; whereas the motorman's

testimony as to the circumstances leading up to the impact was fully substantiated by a passenger who was riding on the north side of the front end of the car. He stated among other things that when he saw the automobile suddenly turn off the highway into the pathway of the streetcar he thought "somebody committed suicide."

Resolving whatever conflicts there may be in favor of the plaintiff, the admitted facts bring the case squarely within the legal principles applied in determining the two cases above mentioned. In each of them, as here, the plaintiff, being aware of the approach of the oncoming streetcar traveling on its own right of way, attempted to cross in front of it, and it was held in each case that the doctrine of the last clear chance could not be applied, because the plaintiff, having been fully aware of the oncoming streetcar, had the greater opportunity of avoiding injury by simply stopping his vehicle before he drove upon the track. In the New York Lubricating Oil Co. case, *supra,* the facts relating to the accident are so similar to those of the present case as to be identical. There as here the accident occurred on Sloat Boulevard. A truck attempted to cross in front of a rapidly approaching streetcar, after the driver of the truck had seen the streetcar. The judgment was for the plaintiff, and in reversing it the court said: "Admittedly the driver of the truck not only could see, but actually did see, the car as it came down the descent at an excessive rate of speed. And if he could, as the evidence shows without contradiction, have stopped his truck at any time prior to the collision within a distance of three feet, then surely his failure to do so under the shown circumstances of an obvious and imminent danger was a failure to exercise that ordinary care which a reasonably prudent man is required by the law to exercise in such a situation. . . . The rule with reference to the duty of a person approaching a railroad track is equally applicable to electric railroads which are being operated under conditions similar to those under which steam railroads are ordinarily operated. That is to say, as much care and caution is required of a person crossing the tracks of an electric railway upon a private right of way in the open country as is required of a person crossing the tracks of a steam railway. (*Martz* v. *Pacific Electric Ry. Co., supra* [31 Cal.App. 592 (161 P. 16)] ; *Heitman* v. *Pacific Electric Ry. Co.,* 10 Cal.App. 397 [102 P.

15] ; *Simoneau* v. *Pacific Electric Ry. Co.*, 159 Cal. 494 [115 P. 320] ; *Phillips* v. *Washington etc. Ry. Co.*, 104 Md. 455 [10 Ann.Cas. 334, 65 A. 422].) It was the duty of the driver of the truck to note the speed at which the electric car was approaching the crossing, and if, when the driver of the truck last looked at the approaching car, it was within such a distance and going at such an apparent rate of speed as to cause a reasonable apprehension of danger, it was undoubtedly negligence on the part of the driver to attempt to make the crossing. (*Martz* v. *Pacific Electric Ry. Co., supra.*) It is the rule in this state that where the physical facts shown by the undisputed evidence raise the inevitable inference that a person approaching a railroad crossing did not look or listen, or that, having looked and listened, he endeavored to cross immediately in front of a rapidly approaching train which was plainly open to his view, he is, as a matter of law, guilty of contributory negligence. (*Martz* v. *Pacific Electric Ry. Co., supra; Jones* v. *Southern Pacific Co.*, 34 Cal.App. 629 [168 P. 586].)''

And in holding that the doctrine of last clear chance had no application to the facts of the case, the court went on to say: ''Conceding, however, that the motorman, while he was yet some distance from the point of collision, was aware of the approach of the truck, nevertheless it is an undisputed fact that the driver of the truck was likewise aware of the approach of the car, and that he could have brought the truck to a standstill within a distance of three feet. There was a concurrent duty, as a matter of law, upon the part of the driver of the truck to stop, if possible, before the actual collision occurred. Obviously the truck proceeding at the slow rate of speed mentioned, and with the ability to stop within the short distance of three feet, had the greater opportunity to avoid the collision. And so long as the negligence of the driver of the truck in continuing on in his course to the point of crossing the tracks of the defendant was contemporaneous and concurrent with that of the defendant's motorman, plaintiff cannot rightfully rest its case upon the doctrine of last clear chance. (*Young* v. *Southern Pacific Co.*, 189 Cal. 746 [210 P. 259].)''

In *Rasmussen* v. *Fresno Traction Co., supra,* plaintiff was driving south on West Avenue near the city of Fresno where said avenue crossed the defendant's double track private

right. of way. The country was open and either vehicle could have been seen for several hundred feet. The double track right of way ran east and west and the streetcar with which plaintiff collided was eastbound on the south track. When plaintiff was 10 feet north of the north track he saw the streetcar approaching between 200 and 300 feet away. He shifted into second gear and proceeded across the north track and on to the south track at a speed of five miles an hour, at which speed he could have stopped immediately. The streetcar was proceeding at 30 to 35 miles an hour, and weighed 16 tons. In holding that the doctrine of last clear chance was not applicable, and that the court therefore erred in instructing the jury on that doctrine, the court said: "In such a case as this a motorman has a right to assume that the driver of the automobile will stop. His streetcar is heavier and cannot turn aside and he may reasonably, and naturally will, delay stopping in the belief that the other will stop or will get across the track. There is naturally a much shorter time during which it is possible for him to see and realize that the other is not going to stop and cannot get across, since the other may come very close before stopping and if he does not stop may speed up to get across. The very fact that a motorist slows down almost to a stop when about 20 feet away, as the respondent did here, is apt to lead the motorman to believe that the motorist is going to stop, and would naturally tend to delay his application of the brakes. On the other hand, the driver of the automobile not only has the duty to stop but in his lighter and quicker vehicle has much more of an opportunity to stop or to speed up. Even after the respondent failed to stop, the slightest exercise of care on his part would have enabled him to avoid the accident by a very slight increase in speed which would have been easily possible at the rate he was going.

"In determining whether the doctrine of last clear chance is applicable the test is whether, when both parties have been negligent, the plaintiff has ceased to have the power to prevent the accident and the defendant may still do so by exercising ordinary care. (*Darling* v. *Pacific Electric Ry. Co., supra* [197 Cal. 702 (242 P. 703)].)

"Applying this test here we conclude that the court erred in submitting the issue of last clear chance to the jury. . . .

Further, if it could be held under the evidence that the motorman had any chance to stop after he realized the danger it must inevitably be held that the respondent not only had a chance but that he actually had a better chance to avoid the collision. When he was some 20 feet from the point of impact he observed the oncoming car which, according to his own evidence, may have been not more than 200 feet away. Without knowing how fast the car was coming he slowed down to five miles an hour or less and, changing to second gear, proceeded across the tracks without stopping or increasing his speed. Under such circumstances the theory that he was oblivious to his danger because he did not again look toward the streetcar cannot be invoked to show his inability to escape, and his negligence was not only continuous to the last but was the proximate cause of his injury. There was neither evidence justifying an inference that the respondent was unable to escape from his position of peril nor that the motorman had a clear opportunity to avoid the accident. The doctrine of last clear chance was never intended to protect a plaintiff from what amounts to suicidal recklessness and it should not be thus extended. Regardless of any other consideration it fully appears that the respondent, right up to the moment of the impact, had not only a chance but the better chance to avoid the accident.''

Another case which might be cited in support of the trial court's ruling is *McHugh* v. *Market Street Ry. Co.*, 29 Cal. App.2d 737 [85 P.2d 467], wherein the plaintiff attempted to cross in front of an approaching streetcar, and the doctrine of last clear chance was held inapplicable, the court saying: ''It is quite certain, however, that under the admitted facts of the present case the doctrine of the last clear chance is not available to plaintiff, for the reason that it has been specifically held that the doctrine has no application where by the exercise of ordinary care the plaintiff up to the very moment of the accident could have avoided it (*Palmer* v. *Tschudy*, 191 Cal. 696 [218 P. 36] ; *Young* v. *Southern Pac. Co.*, 189 Cal. 746 [210 P. 259] ; 19 Cal.Jur. p. 658, and 8 Cal. Jur. Supp. p. 368, and cases cited therein) ; nor where the driver of an automobile is in no apparent peril until the very moment of the collision with the streetcar (*Read* v. *Pacific Electric Ry. Co.*, 185 Cal. 520 [197 P. 791].) In other words, if after a plaintiff is aware of the danger, and being able to

escape it by the exercise of ordinary care, he neglects so to do, he cannot invoke the last clear chance to place the burden of the resulting loss upon the other party, because obviously, if both parties to an accident could by the exercise of ordinary care have avoided it, neither can be said to have had the last clear chance. (*Palmer* v. *Tschudy, supra; Arnold* v. *San Francisco-Oakland T. Rys., supra* [175 Cal. 1 (164 P. 798)].)''

The evidence in the present case in favor of plaintiff is even much weaker than that considered in the foregoing cases, because in each of them the automobile approached the track from the intersecting street, and therefore could be seen for some distance headed directly toward the track; whereas here the automobile was traveling along a main highway parallel to the streetcar tracks until it abruptly turned to the left into the pathway of the streetcar. Moreover in the New York Lubricating Oil Co. case, *supra,* the statement of facts shows that up to within 50 feet of the point of collision the motorman was not giving his entire attention to the track ahead of him; and that when he ultimately discovered that a collision was imminent and inevitable he abandoned his position, jumped back into the car, and did not go forward to stop the car until it was 300 or 400 feet beyond the point of collision; while here, just as soon as the motorman saw plaintiff turn off the main highway to the left toward the track he made every effort to stop the car, and it was stopped in a comparatively short distance beyond the point of collision.

Nor is the situation here altered by plaintiff's testimony (which was flatly contradicted by the motorman and the passenger) that before making the turn he gave an arm signal, for the reason that he admitted that after having given the arm signal he looked and saw the oncoming streetcar in ample time to have stopped his coupé before reaching the track, but that nevertheless he drove blindly into the pathway of the car.

Many other cases based on factual situations analogous to the one here presented could be cited in further support of the trial court's ruling that the doctrine of the last clear chance was not involved, among them being *Young* v. *Southern Pacific Co.,* 189 Cal. 746 [210 P. 259]; *Poncino* v. *Reid-Murdock & Co.,* 136 Cal.App. 223 [28 P.2d 932]; *Arnold* v. *San Francisco-Oakland Terminal Rys.,* 175 Cal. 1 [164 P. 798]; *Bagwill* v. *Pacific Electric Ry. Co.,* 90 Cal.App. 114

[265 P. 517]; *Giannini* v. *Southern Pacific Co.*, 98 Cal.App. 126 [276 P. 618]; and *Read* v. *Pacific Electric Ry. Co.*, 185 Cal. 520 [197 P. 791]; but it would seem unnecessary to elaborate on them, for it is apparent that the decisions rendered in those cases from which the above quotations are taken are decisive of the appeal.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.