[Civ. No. 3117.    Third Appellate District.—March 18, 1927.]

## JACOB ZOLKOVER, Appellant, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation) et al., Respondents.

[1] Negligence — Passing Street Railway Trains — Pedestrian Struck While Standing Between Tracks—Inappplicability of Doctrine of Last Clear Chance.—In an action against two railway companies for damages for personal injuries to a pedestrian who was struck while standing between the tracks of two passing street railway trains, the doctrine of last clear chance was not applicable as against either of the defendants, where the testimony of the motorman of the train which struck plaintiff was to the effect that he did not see the plaintiff, and the operation of the other train did not have anything to do with the injuries sustained by the plaintiff.

[2] Id.—Last Clear Chance—Possibility of Escape.—Physical possibility of escape is not essential for the application of the doctrine of the last clear chance, but the actual peril of the party injured must be observed, and the peril one from which the injured party would not probably be able to escape by the exercise of ordinary care.

[3] Id. — Contributory Negligence — Evidence.—In such action, the jury was justified in concluding that plaintiff was guilty of contributory negligence, which proximately led to his injury.

[4] Id.—Motorman and Pedestrian—Reciprocal Duties.—The duty of the motorman to protect the plaintiff and the duty of the plaintiff to protect himself are reciprocal, that is, it is as much the duty of the plaintiff to protect himself as it was the duty of either of the motormen involved in the case.

[5] Id.—New Trial—Affidavit Based on Information and Belief—Proper Striking Out of—Discretion—Appeal.—In such action the trial court did not err in striking out an affidavit filed by plaintiff in support of his motion for a new trial, where such affidavit was based upon information and belief and did not state sufficient cause for granting a new trial; and the discretion of the trial court in refusing to set aside the verdict of the jury upon such an affidavit would not be disturbed upon appeal.

---

2. Applicability of doctrine of last clear chance where danger *not* actually discovered, notes, 55 L. R. A. 418; 36 L. R. A. (N. S.) 957. See, also, 19 Cal. Jur. 653, 655; 20 R. C. L. 141.

[6] ID.—VOIR DIRE EXAMINATION OF JURORS—NATURE OF QUESTIONS —CHALLENGES. — In such action, there was no error in limiting plaintiff's *voir dire* examination of jurors, where his questions were not propounded for the purpose of laying the foundation of a challenge for cause, but were asked simply for the purpose of enabling the plaintiff to determine whether he would or would not desire to exercise peremptory charges.

[7] ID. — REFUSED INSTRUCTIONS — TRANSCRIPT. — In such action, the plaintiff cannot justly complain of the refusal of the trial court to give requested instructions where none of the instructions asked for by the plaintiff and refused by the court are set forth in the transcript.

[8] ID. — FAVORABLE INSTRUCTION — ABSENCE OF GROUND FOR COMPLAINT.—An appellant cannot complain where the instructions are more favorable than the facts warrant.

[9] ID.—VERDICT—LETTER SIGNED BY FOREMAN OF JURY—EFFECT OF —JUDGMENT.—In such action, a letter signed by the foreman of the jury setting forth that the jury considered the accident unavoidable and containing a request that the defendants should recognize a moral obligation to compensate the plaintiff, which letter was handed to the court after the verdict had been rendered by the jury in favor of both defendants and all the jurors had answered that such was their verdict, and which the foreman had wished to present to the other jurors before the verdict was read but was not permitted to do, furnished nothing upon which the trial court could take any action further than to disregard the same, and does not constitute any basis for a reversal of judgment entered in the case.

(1) 36 Cyc., p. 1568, n. 11.   (3) 22 C. J., p. 731, n. 81; 36 Cyc., p. 1605, n. 30.   (4) 36 Cyc., p. 1494, n. 4.   (5) 4 C. J., p. 838, n. 7. (6) 35 C. J., p. 387, n. 33.   (7) 4 C. J., p. 543, n. 44.   (8) 4 C. J., p. 918, n. 42.   (9) 38 Cyc., p. 1822, n. 2.

APPEAL from a judgment of the Superior Court of Los Angeles County.   John Perry Wood, Judge.   Affirmed.

The facts are stated in the opinion of the court.

6.   Right of counsel to examine jurors on *voir dire* to determine whether to exercise right of peremptory challenge, notes, 119 Am. St. Rep. 563.   See, also, 15 Cal. Jur. 433; 16 R. C. L. 246.

7.   See 2 Cal. Jur. 699

8.   See 2 Cal. Jur. 840, 1005.

Bertrand J. Wellman, John C. Miles and Samuel Marks for Appellant.

Frank Karr, E. E. Morris, C. W. Cornell, Gibson, Dunn & Crutcher and N. S. Sterry for Respondents.

PLUMMER, J.—Some time between the hours of 5 and 6 o'clock on the evening of November 20, 1922, in the city of Los Angeles, the plaintiff was injured by being run over by one of the trucks of a car of a three-car train, then and there belonging to and being operated by the respondent, Pacific Electric Railway Company, and brought this action against both named defendants to recover damages. Judgment went for the defendants and the plaintiff appeals.

Appellant has not furnished us with any general statement of the facts in this case, but counsel for the respondent, Los Angeles Railway Corporation, has taken pains to set forth a full account of all the incidents and occurrences connected with the injury of the plaintiff, which, by comparing with the testimony, we find to be so accurate as to justify our adopting the same as correctly presenting all the issues involved herein. We will not attempt direct quotation, but will follow the recital of facts therein set forth.

The injury to the plaintiff occurred at the intersection of Main and Seventh Street in the city of Los Angeles, being one of the busiest intersections in said city. Main Street runs northerly and southerly, Seventh Street runs easterly and westerly. Both streets are approximately fifty feet in width, that is, from curb line to curb line. On both streets are the tracks of said railway companies. At the time of the injury, the respondent, Los Angeles Railway Corporation, was operating an electric car running in a northerly direction, while the respondent, Pacific Electric Railway Company, was operating a car running in a southerly direction. Both cars were being operated upon Main Street and at the intersection thereof with Seventh Street. The plaintiff, for something over three years, had conducted a place of business at No. 332 Main Street, and was entirely familiar with the intersection referred to, and had crossed the same several times daily for a period of three or four years. The crossing of the intersection involved was, at the time of the

injury, controlled by traffic signals. This control related, however, only to vehicular traffic, including street-cars.

Semaphores were used for controlling the movement of traffic. When traffic was moving east and west on Seventh Street, the semaphores on the northeast and southwest corners of the intersection displayed at right angles to the flow of traffic a white sign marked "Go," while the semaphores on the southeast and northwest corners displayed at right angles to the flow of traffic north and south a red sign marked "Stop." Prior to a change in the direction of traffic, a bell would ring and the semaphore marked "Go" for east and west bound traffic would drop and a "Stop" signal would rise in its place. After an interval of ten seconds, the semaphore marked "Stop" for north and south bound traffic on Main Street would drop and a "Go" signal would be raised, this being the signal for traffic to proceed north and south. The ringing of a bell about ten seconds before a change in the direction of the traffic was given for the purpose of permitting vehicles and persons thereon moving in the then direction of the traffic allowed time to clear the intersection and, also, as a warning not to enter upon the intersection in the direction of the traffic about to be stopped. At the time in question, the plaintiff was in perfect health, possessed good eyesight and good hearing, was active in body and able to move about freely. The plaintiff, when at the intersection of Main Street and Seventh Street, prior to executing his purpose of crossing Main Street by going over the same in an easterly direction parallel with the south line of Seventh Street, observed that there was standing on the north side of Seventh Street a three-car Pacific Electric train bound south and on the south line of the intersection of Seventh Street standing on Main Street a north-bound Los Angeles car, both waiting for a change in the traffic signals, enabling the former to move in a southerly direction and the latter to move in a northerly course. The plaintiff, accompanied by one Richard Barnes, started across the intersection in an easterly direction along the south line of Seventh Street, with the conditions existing as just set forth. Our attention has not been called to anything in the record showing that the plaintiff heard the ringing of the bell preceding a change of the semaphore signals, nor have we found anything in the

record, nor has anything been called to our attention indicating that the plaintiff before starting to cross the intersection waited, paid any attention to, or endeavored to ascertain whether the preliminary warning bell had been sounded. Without any reference to the preliminary warning bell, the plaintiff, walking along the side of Mr. Barnes, proceeded to the center of the street, and upon reaching that location observed that the semaphores had been changed, giving the ''Stop'' signal to traffic moving easterly and westerly on Seventh Street and the ''Go'' signal to traffic moving northerly and southerly on Main Street. At that instant of time the Los Angeles car, standing on Main Street immediately south of the south line of Seventh Street, sounded its gong or bell, indicating that the car was about to be started northerly, and thereupon the plaintiff and Mr. Barnes stopped in the space between the two car lines, that is, between the tracks on which the Los Angeles car was bound north and the tracks on which the Pacific Electric car was bound south. This space was two feet in the clear of the overhang of the steps on the respective cars and two feet eight inches in the clear of all other portions of the overhang of the respective cars.

It appears from the testimony that after the Los Angeles car had sounded its warning bell it remained standing for some seconds, giving sufficient time for pedestrians to cross the tracks upon which it was standing, in the event they so elected. The plaintiff and Mr. Barnes stopped and remained at the place stated. The motorman of the Los Angeles car observed where the plaintiff was standing and moved his car forward very slowly. The motorman of the Pacific Electric train, upon the signal being given to proceed, immediately started and propelled his train in a southerly direction along Main Street past where the plaintiff and Mr. Barnes were standing. As this train was passing the plaintiff, the plaintiff either stepped backward, or, as stated by Mr. Barnes, swayed backward and was struck by some part of one of the cars of the Pacific Electric train and was thrown under one of the wheels of that train. One arm was injured so as to necessitate amputation. Other minor injuries were also sustained. The testimony of the plaintiff touching this particular time is as follows: ''While I was standing there, I knew that the two cars would pass each

other with myself between them; I thought I was perfectly safe; I was standing right in the middle; I had seen one other man standing in the same place; I was dressed in an overcoat and heavy suit.  I was in the middle, maybe too far there, but I was in the middle; I thought I was safe.'' After the Los Angeles car rang its bell it did not start immediately, but stood still for two or three seconds.

The testimony of Richard Barnes is to the effect that he stood by the side of the plaintiff ten or fifteen seconds after the warning bell was sounded by the Los Angeles car.  This, however, would appear to be too long an estimate of the time.  The Los Angeles car had just started when the Pacific Electric train came by.  A passenger on an open section of the first car in the Pacific Electric train, looking out of a window, saw the plaintiff standing between the cars. This witness testified that just as he saw the plaintiff, he seemed to be stepping backward or falling back toward the Pacific Electric train, or, as this witness called it, ''the red car,'' and that the red car struck the plaintiff, that the plaintiff stumbled for three or four steps and then fell under the car.

The motorman of the Los Angeles car testified that when he arrived at the intersection, the semaphores were set against him, that he took on and discharged a passenger, and waited for several seconds before the first bell rang indicating a change in traffic, approximately ten seconds, and when the semaphores changed, he rang his bell and started slowly; that he noticed the plaintiff standing between the tracks and was watching him to see that he did not make a movement; that he had his car under control so that he could stop within a foot or so; that after passing the plaintiff, he paid no further attention to him.

Mr. Barnes, who was standing by the side of the plaintiff, testified that there was plenty of room between the two cars; that he had stood between the cars often and had never been hurt.  It also appears that there is sufficient space between the tracks to accommodate traffic policemen at the intersection of all the tracks on Seventh and Main Streets for cars to pass by them safely.

The testimony of the motorman of the Pacific Electric train was that his train was being propelled at a rate of speed of about seven miles per hour.  There is also some

testimony in the record to the effect that the speed was in excess of that stated by the motorman. We find no ordinances set forth in the record, nor is our attention called to any testimony showing the fact, but it appears to be conceded and the cause was tried upon the theory that the ordinances of the city of Los Angeles limited the speed of said cars at the intersection named to six miles per hour.

After the entry of judgment, the plaintiff moved for a new trial supporting his motion by an affidavit. The motion for a new trial being denied, the plaintiff appeals and sets forth four grounds for reversal: 1. That the defendants were guilty of negligence as a matter of law; 2. That the verdict is unconscionable and can only be sustained on the theory that there was an unfair jury, etc.; 3. That the court erred in striking out the whole of an affidavit instead of only the objectionable parts of the affidavit filed by the plaintiff in support of his motion for a new trial; 4. That the court erred in its instructions and in withdrawing the question of the last clear chance from the consideration of the jury, and in the refusal of certain instructions.

It appears to be conceded upon argument that at the time in question the ordinances of the city of Los Angeles contained nothing regulating the crossing of intersections by pedestrians; that the traffic signals did not apply to them. Under such circumstances, it is simply a question of whether the jury was justified in concluding that the plaintiff was guilty of contributory negligence in assuming the responsibility of crossing the intersection under the conditions which we have hereinbefore set forth and then stopping at the place where he did stop, and thereafter in not maintaining a place of safety, which he might have maintained and which is shown to be possible by the fact that the witness, Mr. Barnes, who accompanied him, remained in a position of safety, and was untouched by the passing cars, and this irrespective of whether one of the defendants was or was not guilty of negligence, unless such defendant had a last clear chance of avoiding injuring the plaintiff, and should have taken a course different from that which was pursued. Our attention has not been called to anything in the record tending to indicate that the motorman of the Los Angeles car had anything to do with the injury of the plaintiff, or that he would not have been injured had the Los Angeles

car remained perfectly stationary until after the Pacific Electric train had passed by. It appears that all of the parties knew and there is sufficient in the testimony to show that the jury were justified in concluding that all of the parties knew that if the plaintiff remained in the center between the two tracks he would not be injured.

[1] The testimony of the motorman of the Pacific Electric train is to the effect that he did not see the plaintiff. Whether he saw the witness Barnes, who was standing between the tracks near the plaintiff, the record does not disclose. This fact, however, does eliminate from the cause of action against the Pacific Electric Company the doctrine of the last clear chance, and, as we have said, in so far as the Los Angeles Railway Corporation is concerned, the operation of its car does not appear to have had anything to do with the injury sustained by the plaintiff. There seems to be no departure from the doctrine that the principle of the last clear chance is based upon the fact that the defendant actually knew of the danger of the plaintiff, that the plaintiff would not probably be able to extricate himself from such danger and that the defendant had an opportunity to avoid the accident and, therefore, is responsible, if the available opportunity is not accepted and acted upon. (*Tucker* v. *United Railroads,* 171 Cal. 702 [154 Pac. 835] ; *Haber et al.* v. *Pacific Elec. R. R. Co.,* 78 Cal. App. 617 [248 Pac. 741], and cases there cited.)   [2] It may be stated that physical possibility of escape is not essential for the application of the doctrine of the last clear chance, but the actual peril of the party injured must be observed, and the peril one from which the injured party would not probably be able to escape by the exercise of ordinary care.   [3] As we have shown by the facts detailed, the doctrine of last clear chance is not applicable as against either of the defendants, and the case resolves itself into one where the jury was justified in concluding that the plaintiff's negligence contributed to his injury, even though it be admitted that the Pacific Electric Railway Company was guilty of negligence in propelling its train across the intersection at a speed in excess of six miles per hour.

In addition to what has been said, the plaintiff testified that he had many times seen said cars passing each other at that intersection, with policemen standing between them,

and, also, that he had many times, or, as he used the expression, "lots of times" seen people standing in the space between the tracks as the cars would pass each other. If it be admitted that the motormen were negligent, one seeing him (the plaintiff) and the other one not seeing him, the conclusion cannot reasonably be escaped that the plaintiff was also negligent, as the circumstances show he voluntarily placed himself in the position which he assumed between the two tracks. We are presented with the argument that the plaintiff was hemmed in between the two passing cars. An analysis of the situation, however, demonstrates that this assumption is unfounded. The plaintiff was under as much obligation to safeguard his own welfare as were either of the defendants, and, therefore, if the steps or measures reasonably to be taken by the plaintiff were at hand to avoid the peril, if peril there were, it was incumbent upon the plaintiff to avail himself of such means of escape. The testimony to which we have referred and the maps introduced in evidence show that the Los Angeles car before the change in the position of the semaphores permitting progress was stopped on Main Street south of the south sidewalk line of Seventh Street, and that the front of the Pacific Electric train was north of the north line of Seventh Street. The clear distance between the two trains was between 80 and 90 feet; the Los Angeles car was 50 feet in length. The plaintiff was standing to the right of the witness, Barnes. There was nothing between the plaintiff and the south end of the Los Angeles car. The testimony shows that the plaintiff was where he could observe the movements of both cars, that he saw the change in the semaphore signals, and if he did not care to elect to remain in the space between the two tracks, he had but to go to the south'ward 50 feet to enable him to step to the rear of the Los Angeles car. His own testimony is that he remained there several seconds before the Los Angeles car started, long enough to have permitted him to have walked the 50 feet. Again, after the starting of both trains, the respective distances over which the Pacific Electric train had to move and the distance to be covered by the plaintiff, show that the plantiff might have escaped by walking southward and stepping behind the Los Angeles car, which was moving northward. In doing this, even though the Los Angeles car had been standing still, assuming that

he moved only at the rate of five miles an hour, which any ordinary pedestrian can do without special effort for a few seconds, and which the testimony in this case as to the physical condition of the plaintiff, which we have hereinbefore set forth, leads to the conclusion that he was amply able to do, the plaintiff had an opportunity to remove himself from the space between the tracks before the arrival of the Pacific Electric train. The electric train to overtake him would have had to travel at least 130 feet while the plaintiff was covering a distance of 50 feet. Had the plaintiff moved at the rate of only five miles an hour, to overtake him, with the Los Angeles car standing still, the Pacific Electric train would necessarily have had to move at the rate of a trifle over thirteen miles per hour.

The testimony of the motorman on the electric train was that he was running at seven miles per hour. Other witnesses testified to a higher rate of speed. The jury had a right to accept the testimony of the motorman and had a right also to take into consideration the various statements of the speed of the electric trains given by the different witnesses and to conclude that the Pacific Electric train was not running at such a rate of speed as to preclude the reasonable opportunity to the plaintiff to walk to the south end of the Los Angeles car and to step farther away from the moving Pacific Electric train, if he so desired. In estimating and determining the speed of the electric train the jury had a right to take into consideration the fact that the noise and rumble of the moving of a three-car train does to a certain extent accentuate the idea of speed entertained by many people, and that the testimony of such witnesses may not be so reliable as the testimony of a motorman, who is accustomed to study speed in order to make the schedule upon which his train is being operated, and this notwithstanding the fact that the motorman may be classed as an interested witness. In view of all these matters, we think the jury was justified in coming to the conclusion at which it must have arrived in finding a verdict for the defendants; that if negligence existed, the plaintiff himself was chargeable with contributory negligence, which proximately led to his injury, and, also, the jury was justified in coming to the conclusion from all the facts which we have narrated that the plaintiff was solely responsible for his injury. We do not need to cite

authorities that one cannot venture across the street at an intersection carrying such a large volume of traffic as the one in question without taking reasonable precautions· for his own safety, both as to the time of leaving the sidewalk line and during the entire period that he is upon the intersection. The coming of the automobile has added to the dangers incident to the use of city streets and these dangers, coupled with the ordinary street-car traffic, leads to the conclusion, irrespective of any street ordinances regulating the crossing of streets by pedestrians, that pedestrians are not taking the reasonable precautions to insure their own personal safety, when they do not pay attention to the preliminary gongs or bells warning all users of the streets that the course of the traffic is about to be changed, and that the semaphores permitting the change in the direction of the traffic are about to be reset. If all these precautions to safeguard intersections are not observed, especially by one in possession of all his normal faculties of sight, hearing, and locomotion, it cannot be said that the finding of the jury, which implies the negligence of such a one, is against the evidence.

[4] The duty of the motorman to protect the plaintiff and the duty of the plaintiff to protect himself are reciprocal, that is, it is as much the duty of the plaintiff to protect himself as it was the duty of either of the motormen involved in this case. (*Sheldon* v. *James,* 175 Cal. 474 [2 A. L. R. 1493, 166 Pac. 8], and cases there cited.) In the case of *Bailey* v. *Market Street Ry. Co.,* 110 Cal. 320 [42 Pac. 914], a case involving injuries by passing cars, the supreme court has practically decided the questions we are here considering, in a case involving injuries to a person who was standing in the space between two street-car tracks, who stepped backward and was injured. The recital of the facts, so far as necessary to illustrate the point in that case, is as follows: "A west bound Castro street cable car of defendant was approaching, and, as the seats thereof on the northerly side seemed occupied, while the front seat on the southerly side was vacant, they crossed over the north track upon which their car was approaching, and stood in the space between the two tracks, to do which there was sufficient room. Plaintiff's escort faced the east, and signaled the Castro street car to stop, which it did. Plaintiff, in the

meantime, intent upon the approaching west-bound car, failed to see an east-bound car upon the other or southern track, and unconsciously, and without looking, stepped back upon that track, and was struck by an east-bound street car, knocked down, and severely injured.'' It was held that the plaintiff was negligent and not entitled to recover and the court comments upon the fact that plaintiff was standing between the two tracks where there was room for her so to do and that her stepping backward was the cause of her injury. This case has been cited a number of times, and always with approval. What we have said demonstrates that consideration of plaintiff's second alleged ground for reversal is unnecessary.

[5]   The affidavit, the striking out of which is alleged to be error and constituting appellant's third ground alleging cause for reversal, appears to be based wholly upon information and belief. We find nothing therein set forth as facts founded upon the knowledge of the affiant. The affidavit used on motion for a new trial is too long to be set forth herein, and as we read it, it does not state sufficient cause for granting a new trial, even though the trial court had allowed it to remain as a part of the record. Being all based upon information and belief, the discretion of the trial court in refusing to set aside the verdict of the jury upon such an affidavit would not be disturbed upon appeal. (*Gay* v. *Torrance,* 145 Cal. 144 [78 Pac. 540] ; *Lamberson* v. *Superior Court,* 151 Cal. 458 [11 L. R. A. (N. S.) 619, 91 Pac. 100].)   Other cases might be cited, but these cases set forth the rule concerning affidavits setting forth only information and belief. It may be here stated that the appellant has presented neither argument nor any authorities in support of his allegation that the court erred in striking out the objectionable affidavit.

[6]   Appellant also urges that the court erred in limiting his *voir dire* examination of jurors. The transcript, however, shows that the examinations and questions asked the prospective jurors, in sustaining objections to which it is alleged the court erred, reveals the fact that the questions were not propounded for the purpose of laying the foundation for a challenge for cause, but were asked simply for the purpose of enabling the plaintiff to determine whether he would or would not desire to exercise peremptory challenges.

That such an examination is not permissible is definitely settled by the case of *People* v. *Edwards,* 163 Cal. 752 [127 Pac. 58]. See, also, 15 Cal. Jur. 433.

[7] None of the instructions asked for by the appellant and refused by the court are set forth in the transcript, which fact, of course, eliminates this portion of appellant's fourth alleged reason for reversal. As to the instructions given, the appellant alleges the court instructed the jury that "pedestrians must yield right to street cars, and this regardless of plaintiff's inability to do so because of being hemmed in between two cars." We have read every word of the instructions given by the court and there is absolutely nothing in the record justifying such assertion. If made through proper motives, we can only attribute the appearance of the statement in appellant's brief to a failure on the part of counsel to correctly read or interpret the instructions given by the trial court to the jury. If made from any other motives, we may here state that such a course is useless, as we are accustomed to read the instructions given to the jury by trial courts in order to ascertain for ourselves just what has been set forth as the law applicable in the case being considered.

At the request of one of the defendants the court gave to the jury the following instruction: "If you find that the car of either defendant was managed by the motorman in charge of it in the same manner as an ordinarily prudent man, under the same circumstances as was the said motorman, would have managed said car, then I charge you that your verdict must be for that defendant."

And, at the request of the plaintiff, the following instruction was given: "If the plaintiff was standing in the space between the tracks in front of the street cars the motorman in charge of each car was in duty bound to see him if, in the exercise of ordinary care he could see him, and, if he did not see him when in the exercise of ordinary care he could have seen him, then that motorman was guilty of negligence."

It is urged that the latter instruction is inconsistent with the former and, therefore, that the jury necessarily was misled. No objection to the first instruction herein set forth is pointed out and we do not perceive any. As to the latter instruction, we doubt its applicability under the facts as

disclosed by the record.  It is more favorable to the plaintiff than he was entitled to.  It would convey to the jury the idea that the plaintiff was in front of the said cars in question, which is not the case.  He was in the space between the tracks and in a space over which neither car ran and could not be said to be in front of either car, in the sense of being where he would be necessarily run over by a car running either north or south.

[8]  Appellant cannot complain where the instructions are more favorable than the facts warrant.  (*Wood* v. *Moulton,* 146 Cal. 317 [80 Pac. 92] ; *Byrne* v. *Western Pipe & Steel Co. etc., ante;* p. 270 [253 Pac. 776].)  No other objections are specifically pointed out, but we may state that a study of the instructions reveals that the trial court gave a very clear and comprehensive statement of the law applicable to all the facts involved in this case.

[9]  The jury in this case returned a sealed verdict and then was allowed to separate.  Upon the reconvening of court and before the verdict was opened, the foreman of the jury asked permission for the jury to retire for five minutes before the verdict was rendered.  This, however, the jury was not permitted to do.  The verdict was then rendered by the jury in favor of both defendants.  Upon the jury being polled, all of the jurors answered that such was their verdict.  The foreman then handed to the court a letter signed by himself setting forth that the jury considered the accident unavoidable, and contained a request that the defendants should recognize a moral obligation to compensate the plaintiff.  This letter, of course, signed by the foreman and which he wished to present to the other jurors before the verdict was read, furnished nothing upon which the trial court could take any action further than to disregard the same, and does not constitute any basis for a reversal of the judgment entered in this case.

The judgment of the trial court is affirmed.

Shields, J., *pro tem.,* and Finch, P. J., concurred.