[S. F. No. 12805. In Bank.—March 8, 1929.]

LILLIAN MURPHY PEVONAK, Appellant, v. THE CITY AND COUNTY OF SAN FRANCISCO (a Municipal Corporation) et al., Respondents.

Bronson, Bronson & Slaven and H. R. McKinnon for Appellant.

John J. O'Toole, City Attorney, and Henry Heidelberg, Deputy City Attorney, for Respondent City and County of San Francisco.

Wm. M. Abbott, K. W. Cannon, Cyril Appel and Ivores R. Dains for Respondent Market Street Railway Company.

PRESTON, J.—The judgment is reversed, and in so ruling we assign the following grounds:

■ Appellant asserts that the record shows the following facts: "The action is one for damages for personal injuries arising out of an accident which occurred on August 31, 1923, at the intersection of Kearny and Market streets, in San Francisco. At this point on Market street there are four parallel street car tracks, the inside tracks being operated by the respondent Market Street Railway Company (hereinafter called the Market Street Company), and the outside tracks being operated by the respondent City and County of San Francisco. (The latter tracks will be referred to hereinafter as the 'Municipal tracks.') On the evening of that day, about 5:30 o'clock p. m., the appellant arrived at the safety zone at said intersection for the purpose of taking a No. 21 car of the Market Street Company outbound toward her home. There was, according to the testimony, somewhat of a tie-up, and quite a number of people were waiting in the safety zone. A No. 21 car approached on the Market Street Company tracks, and as it did so a group of people, estimated at ten or twelve, walked across the Municipal tracks to a position between the Market Street Company tracks and the Municipal tracks for the purpose of boarding said No. 21 car. Appellant was one of this group, being the person on the extreme right thereof. The No. 21 car began to slow up, but was motioned on by a Market Street Company starter, who was standing near the group of prospective passengers. In obedience to said signal the No. 21 car passed by the safety zone and the intersection of Kearny

street without stopping. As it passed through the safety zone it was closely followed on the Market Street Company tracks by a No. 8 car. As this No. 8 car approached the safety zone there approached, along the Municipal tracks and practically abreast with the No. 8 car, a 'K' car, operated by respondent City and County of San Francisco. So closely behind the No. 21 car came this No. 8 car and 'K' car, that when the No. 21 car had been motioned past the intersection without stopping, there remained no opportunity for the group of ten or twelve persons to recross the Municipal tracks to the position from which they had started. In case the '8' and 'K' cars should persist in coming on together, therefore, the only means of safety which this group would have would be to stand between the two outbound pairs of tracks. There is barely room for a person of ordinary physique to stand between cars on the two pairs of tracks; there is room if such person stands sideways between the two tracks, but not if he stands at right angles. The position of greatest danger is when a person is standing between the center sections of the two cars, for the 'K' car is wider by 1 foot 7 inches at the center than it is at the ends. The evidence indicates that both the '8' and 'K' cars came on at a rapid rate of speed and did not slow up at all as they began to pass the group. (One witness testified that the '8' slowed up slightly, but that the 'K' came through without changing its speed at all.) Of the group of ten or twelve persons, appellant was standing on the extreme right, i. e., in the most westerly position (toward Twin Peaks). She was standing slightly apart from the others. The others were grouped together closely. Observing that the two cars were going to try to pass simultaneously, they huddled together, side by side, their shoulders, however, overlapping. About four feet of the '8' car had passed appellant, according to her testimony, and the front end of the 'K' car was just about opposite her when appellant was struck violently by the person immediately to her left (a Mrs. Essener) and thereby hurled against the side of the passing '8' car. She was thrown in turn by the '8' car back against the 'K' car, then back from the 'K' car against the '8,' and then thrown by the '8' car onto the pavement, so that when the 'K' car stopped appellant was lying

under the 'K' car with her shoulder against the front pair of wheels of the rear truck. When the '8' car stopped, its rear platform was opposite appellant. Several other persons of the group had been knocked down. Mrs. Essener was lying across plaintiff's shoulders, and a man across plaintiff's knee. Appellant testified that she watched the two cars as they approached, and that she thought there was room for the cars to pass herself, but not room for them to pass the group to her left. No one could testify which one of the group was hit first, nor by which car."

This statement we find to be correct, with the exception that respondents both emphasize the fact that the front of the car had passed plaintiff without injuring her, and the further fact that no evidence was adduced by plaintiff from which it could be inferred that the car of either respondent actually struck anyone at the time and place in question. The court below, after denying a motion for nonsuit, later, at the close of the evidence, directed a verdict for respondents. Plaintiff has appealed.

Under this record, we think that the issue of liability rested upon a question of fact and not upon a question of law.

We agree with appellant that the jury would have been warranted in finding either that one or more of the group of persons so standing between the tracks were negligently struck by one or the other or both of the cars of respondents, and that the injury to appellant was the direct consequence of such negligent operation of said car or cars or that the situation was such that it was a negligent act on the part of respondents in attempting to pass a group of people in this narrow space at a rapid rate of speed, which, by reason of the existing situation of the intended passengers, caused jostling and confusion among them, which in turn caused some of the group to be knocked down, in turn causing plaintiff to be struck and to receive as a result thereof the injuries complained of.

In other words, it is our view that it was a question of fact for the jury whether or not these two cars should have simultaneously traversed their respective tracks when a group of ten or twelve persons were crouched together in such a narrow space, there being also ample evidence that the crowd had been placed in this position without fault

upon their part, having crossed said municipal tracks for the purpose of boarding a car which the agent of respondent Market Street Company did not allow to stop and having been prevented from retracing their steps to a place of safety by the oncoming of the two other cars.

The position of these tracks is at best a menace to life and limb, and to our mind it was certainly a question of fact whether or not the operating companies used ordinary care under the circumstances. The question of whether the front end of the car had or had not passed plaintiff is not controlling, nor is it of controlling importance that it cannot be said whether the injury resulted from a car striking some one of the group of persons or whether from fear or confusion. (*Lewis* v. *Young Men's Christian Assn., ante*, p. 115 [273 Pac. 580].)

The presence or absence of negligence cannot be determined alone by legal precedents. It is determined by the related and relative facts and circumstances and, of course, is usually determined as a fact, for the evidence is rarely in such a condition that a court may safely grant a nonsuit or direct a verdict as a matter of law.

We need not consider the contention that plaintiff in fact became a passenger and was entitled to claim a higher degree of care on the part of the Market Street Company. We hold that upon this record an issue of fact arose which would sustain a verdict for plaintiff upon the ground that ordinary care was absent; hence the conclusion first above announced.

Curtis, J., Waste, C. J., Shenk, J., Richards, J., Seawell, J., and Langdon, J., concurred.

Rehearing denied.

All the Justices present concurred.