[Civ. No. 4486.   Third Appellate District.—January 26, 1932.]

J. W. BABCOCK, an Incompetent Person, etc., Respondent, v. PACIFIC GAS AND ELECTRIC COMPANY (a Corporation) et al., Appellants.

Thos. J. Straub, C. F. Stanley and W. H. Hatfield for Appellants.

Otis D. Babcock and W. A. Green for Respondent.

PLUMMER, J.—This cause is before us upon an appeal by the defendant from an order granting a new trial after judgment on a verdict rendered by the jury in favor of

the defendant. The order granting a new trial sets forth that it is granted on account of errors in law occurring at the trial.

The action was brought by the plaintiff and respondent, by his guardian *ad litem,* to recover damages for personal injuries alleged to have been sustained by reason of being struck by a street-car belonging to the defendant Pacific Gas and Electric Company, and operated by the defendant Meyer. The injuries are alleged to have been received at about 9 P. M. on the evening of August 31, 1930.

It appears that the plaintiff was crossing Y Street between 30th and 31st Streets in the city of Sacramento, and on a line about 60 feet east of the easterly line of 30th Street. Y Street is 48 feet in width, is an arterial street, and has two sets of street-car tracks. Y Street runs easterly and westerly. The south set of tracks carry east-bound traffic and the north set of tracks carry the west-bound traffic. Y Street is one of the principal thoroughfares leading to the state fair grounds, located about one mile easterly from the point of the accident. The thirty-first day of August, 1930, was the opening day of the state fair. The traffic on Y Street was heavy. At the time of the accident the plaintiff was about sixty-nine years of age; had lived for several years at 2910 W Street, some two blocks north of the scene of the accident. A few days after the accident the plaintiff suffered a stroke of paralysis. The testimony of two eye-witnesses is to the effect that the plaintiff, leading a bicycle, started diagonally across Y Street from a point some 10 or 15 feet east of the east line of 30th Street; that as the plaintiff stepped off the curbing into the gutter of the paved street, he looked both ways; that he then proceeded across the street, as above indicated, and when he had reached the south side of the tracks, he stopped for an instant or two to permit the passing of an automobile which was traveling westerly on Y Street. At this instant of time a car traveling easterly on the southerly tracks, struck the plaintiff, or his bicycle, just as the plaintiff had stepped off the northerly rail of the southerly set of tracks. The testimony of the two eye-witnesses for the plaintiff was to the effect that they were seated on a porch of a building on the north side of Y Street and observed the plaintiff as he stepped from the

curbing into the street, and also observed him as he walked across Y Street, and after stating that the plaintiff looked both ways, the testimony of the two witnesses is substantially the same. We quote that of one of them: "Q. Did you see him at any time look to his left for traffic approaching from downtown? A. No. Q. Then his back was practically to the street car as he proceeded across the street? A. Yes. Q. And when he stopped there in the center of the two tracks he did not look to his left, did he? A. No, he was looking at the cars that were coming from the fair grounds."

The testimony of the motorman is to the effect that when he saw the plaintiff between the rails of the southerly set of tracks, he was about 20 feet distant, and that he immediately applied the emergency brakes; that the car was traveling between 8 and 10 miles per hour; that his car stopped just after he struck the plaintiff; that he did not know whether he struck the plaintiff or whether he struck the bicycle which the plaintiff was leading. There was also some testimony introduced to the effect that the car could have been stopped in less than 20 feet.

The reason for granting a new trial appears to be based upon the fact that the court, at the request of the defendant, gave to the jury certain instructions alleged to be erroneous, which instructions read as follows: "A person about to cross a street railroad track or traversing the street in the immediate vicinity thereof, is obliged to use due care to keep out of the way of moving cars. In approaching a track he or she is bound to look for approaching cars. The failure to take such precaution is negligence." And the further instruction: "Even though you may believe that no bell was sounded on the street car, it was still the duty of the plaintiff, before going upon the track, and after going on the track, to look for the purpose of ascertaining if the car was approaching; he had no right not to look because he had not heard any bell from the car or because none may have been rung. It was his duty, in the exercise of ordinary care, to look for the purpose of seeing that which may have been visible to one looking, with ordinary care."

The witnesses to which we have referred as stationed on the porch of a house just northerly across the street from the scene of the accident, testified that they heard no gong or

bell. It may be further stated that a city ordinance of the city of Sacramento at the time of the accident, required anyone crossing Y Street between 30th and 31st Streets to cross the street at right angles. The law with relation to the duty of one about to cross a city street appears to have undergone a considerable course of development. The earlier cases leaned toward the "stop, look and listen" theory, but as the rule applicable to pedestrians has been stated from time to time, it has tended to the elimination of the "stop, look and listen" theory, and goes no further than to require of one about to cross a city street, to look for automobiles and street-cars in order to ascertain if a pedestrian may safely venture thereon and attempt to make the crossing.

The appellant relies principally upon the case of *Bailey* v. *Market Street Cable Ry. Co.*, 110 Cal. 320 [42 Pac. 914, 917]. In that case the Supreme Court quotes approvingly the following language: "Although the law on this point awaits further elucidation and development by the courts, the decisions thus far rendered both in the United States and Canada tend to establish the rule, at least with reference to electric and cable railways, that the failure to look or listen before attempting to cross, where such precaution would prevent collision, is in law such negligence as will defeat a recovery in an action for damages by the person so injured." As against this we quote from the case of *Bidwell* v. *Los Angeles Ry. Co.*, 169 Cal. 780 [148 Pac. 197, 198], as follows: "It is also claimed that the evidence showed that the negligence of the plaintiff contributed to the injury. It is said on this point, that it was the plaintiff's duty to look and listen before attempting to cross defendant's car track, and that there was no evidence that he did either. The failure of a person to look or listen for an approaching car before crossing a street car track in a city is not always, and under all circumstances, an act of negligence." (Citing *Hamlin* v. *Pacific etc. Co.*, 150 Cal. 779 [89 Pac. 1109]; *Scott* v. *San Bernardino etc. Co.*, 152 Cal. 610 [93 Pac. 677]; *Lawyer* v. *Los Angeles etc. Co.*, 161 Cal. 56 [118 Pac. 237]; *Roberts* v. *Spokane etc. Co.*, 23 Wash. 335 [54 L. R. A. 184, 63 Pac. 506]; *Traver* v. *Spokane etc. Co.*, 125 Wash. 237 [65 Pac. 284].)

The appellant calls our attention to an instruction given by the court in which it is said: "Under these circumstances it was his duty to look and listen before going upon the track of defendant, and if you find from the evidence that an ordinarily careful and prudent man, in possession of all his faculties, had he looked and listened, would have become aware of the approach of said motor car, and the danger of collision, in time to have avoided said accident, by the use of ordinary care and prudence, and that plaintiff failed to look or listen and went upon said crossing when it was too late for defendant's employee, operating said motor car, by the use of ordinary care, to have avoided said accident, then plaintiff was guilty of contributory negligence, and if you find that such negligence was the proximate cause of the accident, the plaintiff cannot recover." No question was tendered in that case as to the correctness of all portions of the instruction. The only question tendered was as to the modification made by the trial court, and it was held that the modification of the instruction which eliminated therefrom these words, was correct: "Then plaintiff was guilty of contributory negligence, proximately causing the accident, and cannot recover." As the verdict was against the appellant, who had requested the instruction, the fact that it was partially erroneous could not be complained of.

In 1928 Permanent Supplement to California Jurisprudence, page 197, of the article on "Automobiles", we find the rule thus stated: "Indeed, the courts have reiterated a rule that there is no positive duty on the part of pedestrians about to cross a street, to stop, look and listen, and that the question of negligence under the usual rule of ordinary care, that devolved on pedestrians, must be examined and applied in the light of all the attending circumstances."

In *Dawson* v. *San Diego Elec. Ry. Co.*, 82 Cal. App. 142 [255 Pac. 215, 217] (hearing denied by the Supreme Court), after stating that one cannot be held guilty of contributory negligence merely because he attempts to cross a street railway when a car is approaching, where, as in cities, street-cars are practically always approaching, the opinion cites a long list of authorities supporting the following statement: "In the case of *Scott* v. *San Bernardino Valley*

*etc. Co.*, 152 Cal. 604 [93 Pac. 677], the principle is discussed by the court and the conclusion reached that in a situation resembling that presented in the instant case the question of whether the plaintiff was guilty of negligence which contributed proximately to the happening of the accident, is one for the determination of the jury.''

Again, in *Nickell* v. *Rosenfield*, 82 Cal. App. 369 [255 Pac. 760, 762] (hearing denied by the Supreme Court), we find the following: ''The court in the Burgesser case, 190 Cal. 673 [214 Pac. 649], after reciting the facts of the *Niosi* v. *Empire Steam Laundry* case, 117 Cal. 257 [49 Pac. 185], concludes that the rule announced in the latter case meant nothing more than that it was the duty of a pedestrian who steps from a curb into a narrow street where traffic is heavy, to look in the direction from which such traffic would be likely to come, before stepping from the curb. . . . and the conclusion reached there is that it was a question of fact for the jury to determine whether the conduct of the pedestrian, under all the circumstances, at the time and place and conditions of traffic, was or was not negligent.''

In *Hansen* v. *Market St. Ry. Co.*, 64 Cal. App. 426 [221 Pac. 955, 957] (hearing denied by the Supreme Court), in an opinion written by Presiding Justice Langdon, after referring to the cases which we have cited, and the rule is thus set forth: ''The failure of a person to look or listen for an approaching car before crossing a street car track in a city is not always, and under all circumstances, an act of negligence. According to the authorities above cited, the failure of plaintiff to look and listen, if it is assumed that he did fail, was therefore not, as a matter of law, negligence on his part, but at most a question to be determined by the jury.'' We quote with approval the language found in *Mann* v. *Scott*, 180 Cal. 550 [182 Pac. 281, 282], where it is said: ''There is no positive duty to stop, look and listen when a pedestrian is about to cross a city street.''

In *Aungst* v. *Central California Traction Co.*, 115 Cal. App. 113 [1 Pac. (2d) 56, 58], this court said: ''That the 'stop, look and listen' rule does not apply to street cars definitely appears from the case of *Carey* v. *Pacific Gas & Elec. Co.*, 75 Cal. App. 129 [242 Pac. 97], where this court (quoting from the syllabus) said: 'The duty of stopping, look-

ing and listening made incumbent upon one about to cross the right-of-way of a steam railroad, is not the rule governing the rights of foot passengers and vehicle drivers in venturing upon, crossing or using the tracks of a street railroad, but the duty of such is no higher than, or different in law from the duty of the company operating the electric car, saving in the one particular that, because the car is confined to its tracks, vehicles and foot passengers must give way to clear its passage.' "

In *Runnells* v. *United Railways,* 175 Cal. 528 [166 Pac. 18, 19], the duty of a pedestrian about to cross a street railroad is thus stated: "As to the legal propositions thus advanced, it must first be said that the duty of a foot passenger or of the driver of a vehicle in crossing the tracks of a street railway has been standardized no farther than is involved in the familiar doctrine of law that in so doing he must exercise reasonable care for his own protection. The duty of stopping, looking and listening made encumbent upon one about to cross the right-of-way of a steam railroad is not the rule governing the rights of foot passengers and vehicle drivers in venturing upon, crossing or using the tracks of a street railroad. The duty of such is no higher than, or different in law from the duty of the company operating the electric car, saving in the one particular so often pointed out, that because the car is confined to its tracks, vehicles and foot passengers must give way to clear its passage." (Citing a long list of cases.)

In the case of *Zolkover* v. *Pacific Elec. Ry. Co.,* 81 Cal. App. 772 [254 Pac. 926], a case relied upon by the appellant, it was not held that the plaintiff in that action was guilty of contributory negligence as a matter of law, but that the jury were justified in concluding, as a matter of fact that the plaintiff was guilty of negligence, and that his negligence contributed to his injury. It was also held in that case that the doctrine of "last clear chance" did not apply.

From these cases the rule may be deduced that before attempting to cross a busy street, it is one's duty to look for approaching vehicles and ascertain whether, as a reasonable person, it is reasonably safe to attempt such crossing, and that it is not, under all circumstances, negligence as a matter of law, if the one so attempting to cross

a street does not continually look in the direction from which traffic may be anticipated, but that his failure to do so is a question for the jury, and if the jury find that he so failed to continue to look, and that such failure was negligence under the circumstances, and contributed to his injury, the person so attempting to cross the street would not be entitled to recover.

In view of the authorities which we have cited, it is manifest that the first instruction which we have quoted is incomplete, and that the second instruction which we have quoted is erroneous. The second instruction also, as it is worded, invaded the province of the jury, as it assumes that the plaintiff did not look.

In 20 California Jurisprudence, 140, we find the following: "In granting a new trial on the ground of erroneous instructions, as upon other grounds, much is committed to the discretion of the trial court, and an abuse of such discretion must appear before the order will be set aside." What we have stated is applicable to the order of the court denying appellant's motion for a nonsuit, and amply supports the correctness thereof.

While the facts set forth in this case involving the contributory negligence of the plaintiff and the "last clear chance" on the part of the defendant are such as would require an affirmance of the judgment if the instructions given were correct, they are not such as to justify this court in stating, as a matter of law, that the plaintiff is not entitled to recover.

The order of the trial court is affirmed.

Thompson (R. L.), J., and Preston, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 25, 1932, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 24, 1932.