[Civ. No. 12823.   First Dist., Div. One.   May 29, 1945.]

ROSA LAGOMARSINO, Respondent, v. MARKET STREET
RAILWAY COMPANY (a Corporation) et al., Appel-
lants.

Cyril Appel, Ivores R. Dains and Bronson, Bronson & McKinnon for Appellants.

Shirley, Robb & Saroyan and J. Francis Shirley for Respondent.

WARD, J. — Plaintiff recovered judgment for $20,000 against defendant Market Street Railway Company and defendant Fernandes, motorman on the car which struck her. As a condition to denying the motion for new trial the court reduced the judgment to $12,000. Defendants appeal from the judgment as thus reduced.

As set forth by appellants the facts of the case are as follows: The accident occurred about 5 o'clock on Monday afternoon, August 2, 1943, near the intersection of Bryant and 16th Streets in San Francisco. Bryant Street runs north and south; 16th Street runs east and west. Double streetcar tracks occupy each street.

Defendant company operated its No. 27 buses on Bryant Street, and its No. 22 streetcars on 16th Street. On the afternoon of the accident plaintiff had boarded a No. 27 bus at 7th Street, and had alighted at 16th Street, to transfer to a westbound No. 22 streetcar. In their operation on 16th Street eastbound No. 22 cars used the south track, westbound cars the north track.

Some eastbound No. 22 cars operated only to the west side of Bryant Street and then turned back. When these cars reached Bryant Street the farebox, trolleys, fenders and controls were shifted, and the cars, in order to proceed west, switched from the south track to the north track, by a switch or cross-over located between Bryant Street and the next street west. These cars were referred to as the "standing" cars, and occasionally as the "Bryant" cars. Other No. 22 cars eastbound on 16th Street crossed Bryant Street, and traveled to the end of the line in the vicinity of the shipyards before returning. At the trial these cars were termed "through" cars, or "3rd Street" cars.

The accident involved (1) a No. 22 car which had just com-

pleted its eastbound run to the west side of Bryant Street and was standing on the south track (prior to turning back) and (2) a "through" No. 22 car which had finished its run· to 3d and 18th Streets, taken on a full load of shipyard workers, and was on its return trip, moving west on 16th Street on the north track and at the time of the accident, passing the "standing" No. 22 car. The space between the two cars as the "through" car passed was 1 foot 11¾ inches.

The right rear gate of the "Bryant" car was customarily opened for passengers while the car remained standing on the south track before switching to the north track. Plaintiff and others were standing in front of this gate, waiting for it to open, and were thus in position between the south and north tracks, when a No. 22 car on the north track traveling westerly came from east of the 16th and Bryant intersection and passed them. The passing car struck plaintiff, knocking her down and inflicting certain injuries.

As grounds for reversal of the judgment defendants contend that plaintiff was guilty of contributory negligence as a matter of law; that the court erred prejudicially in its charge to the jury, and that plaintiff's counsel was guilty of prejudicial misconduct. ■ Plaintiff was contributorily negligent, as a matter of law, according to defendants, because (1) she was negligently unaware of the passing car and stepped back against it after the front part had cleared her safely, and (2) she would not have been endangered had she remained on the sidewalk, moved behind the stopped car, or adjusted her position in the space between the tracks as the westbound car passed her. Plaintiff, familiar with the operation of cars and buses at that point, testified that she neither saw nor heard the approaching car; she felt a "terrible pulling" on the back of her coat and immediately was down on the ground.

The company's custom of opening the right rear gate while the car was on the south track exposed persons about to board the car in dangerous proximity to cars passing on the north track. The defendant company could have taken on passengers through the gate used for the exit of passengers and kept the right rear gate closed until the car switched to the north track. In view of these circumstances it was for the jury to decide whether or not the northbound car passing persons

between the tracks was operated in a reasonably safe manner. On appeal defendants rely on asserted proof as a matter of law of plaintiff's negligence rather than on their lack of negligence. They contend that plaintiff voluntarily chose to stand in a position she knew to be dangerous instead of in a safe position, and that she failed to exercise any care whatever for her safety. Stated in another way, defendants invoke the rule set forth in 38 American Jurisprudence 873 and quoted in *Stricklin* v. *Rosemeyer*, 61 Cal.App.2d 359, 362 [142 P.2d 953], as follows: " 'One having a choice between methods of doing an act which are equally available, who chooses the more dangerous of the methods, is ordinarily deemed negligent, in the absence of a showing of the existence of an emergency, sudden peril, or other circumstances justifying such choice. The fact that the less dangerous method takes longer and is inconvenient and attended with difficulties furnishes no excuse for knowingly encountering the peril.' " Similar language is used in *Zolkover* v. *Pacific Elec. Ry. Co.*, 81 Cal.App. 772 [254 P. 926] and *Choquette* v. *Key ·System Transit Co.*, 118 Cal.App. 643 [5 P.2d 921]. In each of the cases cited the trier of the facts found in favor of the defendant and the reviewing court affirmed the judgment. Their language is therefore not controlling in the present case unless defendants can show that no inference other than one of plaintiff's negligence can reasonably be drawn from the facts.

Defendants do cite two cases wherein the appellate courts reversed judgments for plaintiffs on facts held to constitute contributory negligence as a matter of law. The cases are *McKeown* v. *Northwestern Pac. R. R. Co.*, 20 Cal.App.2d 324 [66 P.2d 1250] and *Bailey* v. *Market Street C. Ry. Co.*, 110 Cal. 320 [42 P. 914]. The plaintiff in the McKeown case while waiting for the train had walked down the concrete platform between defendant's double tracks. When she heard the whistle of the approaching train she turned around and walked back to the place where the train stopped. She was so close to the edge of the platform that the overhang of the train struck her left arm. In the Bailey case plaintiff stepped in front of a moving cable car. These cases are distinguishable from the present case. In neither of them was the plaintiff waiting to board a standing car, about to open, at a place which was a customary loading point when struck down by

a car on the other track, operated by a motorman who was aware of the presence of a group of persons between the tracks clustering about the entrance to the standing car with the purpose of boarding it.

In many details the facts in *Chunn* v. *City & Suburban Railway Co.*, 207 U.S. 302 [28 S.Ct. 63, 52 L.Ed. 219] are similar to those of the present case. At pages 307-308-309 the court said: "The plaintiff had come to a place where passengers had habitually boarded the defendant's cars. The defendant had encouraged and invited persons to enter its cars going south from the space between the tracks, by opening the doors and receiving them from that side. It was a place which, in itself, was perfectly safe, unless made otherwise by the manner in which the defendant used the east track for the passage of cars. The plaintiff, therefore, was not a trespasser nor a mere traveller upon the highway. It is not important to determine whether she had become a passenger. Intending to become a passenger she had come to a place recognized by the practice of the defendant as a convenient and suitable one from which to enter the car, and the car stopped to receive her. The defendant owed her an affirmative duty. It was bound to use that care for her protection, which was reasonably required in view of the situation in which she had at the defendant's invitation placed herself, of the purpose for which she was there, of the approach of the car which she was intending to enter, and of the dangers to be apprehended from contact with a rapidly moving car propelled by mechanical power. A jury might well say that under such circumstances reasonable care demanded the exercise of the utmost vigilance, foresight and precaution. . . . The question whether the plaintiff herself was guilty of contributory negligence presents somewhat greater difficulty. There was room to stand between the two cars and escape contact with either. But the margin of safety was narrow and left little allowance for the infirmities of mankind. In the confusion of two cars approaching from opposite directions it is too much to expect nice calculations of distances. It is not to be wondered at that in the attempt to escape the one the plaintiff fell foul of the other. . . . We think that the plaintiff, if she was rightly where she was, was not as a matter of law guilty of negligence in failing to appreciate accurately the boundaries of the nar-

row zone of safety which the defendant's conduct had left to her. . . . Nor was the plaintiff necessarily wanting in due care by taking her place between the tracks. It was the usual place from which entrance to the Washington car was made. It was safe enough under ordinary circumstances. It was made unsafe only by reason of the defendant's negligent act in running another car rapidly by. The plaintiff had the right to assume that the defendant would not commit such an act of negligence, and that when it stopped one car and thereby invited her to enter it, it would not run another rapidly by the place of her entrance and put her in peril. We think that it cannot be said, as a matter of law, that the plaintiff was guilty of contributory negligence.'' In *Curry* v. *Market Street Ry. Co.*, 54 Cal.App.2d 165 [128 P.2d 715], an action for injuries sustained to plaintiff while standing between tracks with intent to board a streetcar, the court said (p. 168): ''When a passenger seeks to enter a car operated upon the inner rails he is entitled to assume that those operating cars on the outer rails will exercise care to see that he may do so safely.

''Whether such care has been exercised is a question of fact to be determined by the jury under the circumstances of each case. It was so held in *Pevonak* v. *San Francisco*, 206 Cal. 648 [275 P. 785], a case very much like this in its facts, with the exception that both cars were moving through the loading zone at the same time. On reversing a judgment upon directed verdict for the two railways the court said: (p. 651) 'In other words, it is our view that it was a question of fact for the jury whether or not these two cars should have simultaneously traversed their respective tracks when a group of ten or twelve persons were crouched together in such a narrow space, there being also ample evidence that the crowd had been placed in this position without fault upon their part, having crossed said municipal tracks for the purpose of boarding a car which the agent of respondent Market Street Company did not allow to stop and having been prevented from retracing their steps to a place of safety by the oncoming of the two other cars.' '' In the present case the point or place adopted as a car stop was a hazard with which appellants were familiar. (*Pevonak* v. *San Francisco*, 206 Cal. 648 [275 P. 785].)

■ Appellants object to the following instructions: "The responsibility imposed by law upon a carrier of passengers for hire, such as a street railway company, includes the duty to provide a reasonably safe place where the passenger may board the street car.

"If you find from the evidence that plaintiff was exercising ordinary care for her own safety and occupying a place designated by the Market Street Railway Company as a boarding place, then defendant railway company owed to plaintiff the highest degree of care to avoid injuring her.

"The word 'station' as used in these instructions refers to any place at which it is the practice of the carrier to stop for the purpose of receiving or discharging passengers. This includes such places which must be used, or reasonably may be expected to be used, by persons intending to become passengers and while waiting to board vehicles of the carrier."

The word "provide" in the first paragraph, without explanation, does not definitely express the rule applicable to a situation such as this, but the court in the next paragraph makes it plain that "provide," as used, does not mean the erection or equipment of a place to board the streetcars but rather the designation of a place as an area or space. This idea is further fixed by reference to the word "station" as a place at which it is the practice of the carrier to receive or discharge passengers. ■ The carrier was bound to select a reasonably safe station space to receive passengers. The carrier does not become the guardian or insurer of persons about to board streetcars in the sense that a station area is guaranteed as a place of safety from the wrongs of third parties. ■ The relationship of carrier and passenger is not sustained under circumstances of a prospective passenger standing in a station area prior to the immediate approach of a carrier vehicle, but if a person intends to board a vehicle as a passenger and so indicates by the act of standing alongside, and the person in charge of the vehicle indicates an intention to receive the prospective passenger, and, as in this case, stops the car and prepares to immediately receive the person, the relationship of passenger to the carrier is established. ■ From that moment the carrier must use the utmost care and diligence, and a reasonable degree of skill

must be exercised (Civ. Code, § 2100; 4 Cal.Jur. § 66, p. 901; *Chunn* v. *City & Suburban Railway Co.*, *supra; Hart* v. *Fresno Traction Co.*, 175 Cal. 489 [167 P. 885]) by its agents or servants, not only on the standing but on a moving vehicle operated by the same carrier as well. Of course the company seldom controls the space between the curb and track or the actions of passengers coming from the curb. (*Northrup* v. *Pacific Elec. Ry. Co.*, 8 Cal.App.2d 189 [47 P.2d 365]; *Choquette* v. *Key System Transit Co.*, *supra*.) For that reason the relationship may not arise until the passenger is in a position to board the car at an established stop or has actually been accepted by the carrier as a passenger. ". . . that is to say, that one who has the control of or who is operating a car must do something by way of an invitation to one to board the car before the relation of passenger and carrier is created so as to render the carrier liable in damages under the passenger relation." (*Hildebrant* v. *San Francisco*, 69 Cal.App. 590, 595 [231 P. 1008].) "The relationship of carrier and passenger arises when the passenger enters with intent to pay or pays for entrance into the vehicle or carriage. There may be a hiatus in the relationship in instances too numerous to mention but when the purchaser of the rights to be conveyed is in a position to be accepted as a passenger, the relationship is again in force. It is not necessary in order to create the relation of carrier and passenger that the passenger should have actually entered the vehicle. The relation is in force when one, intending in good faith to become a passenger, goes to the place designated as the site of departure at the appropriate time and the carrier takes some action indicating acceptance of the passenger as a traveler." (*Sanchez* v. *Pacific Auto Stages*, 116 Cal.App. 392, 396 [2 P.2d 845].) "That a passenger should have actually entered the vehicle is not a necessary prerequisite to the establishment of the relation of carrier and passenger. Such relationship is established when a person who intends in good faith to become a passenger goes to a depot, waiting room or other place designated as the site of departure, and by some action taken by the carrier, the latter indicates acceptance of the passenger as a traveler." (*Grier* v. *Ferrant*, 62 Cal.App.2d 306, 311 [144 P.2d 631].)

The failure to present a valuable consideration in advance to the carrier is not alone determinative of the relation-

ship of carrier and passenger. (*Grier* v. *Ferrant, supra.*) Carriers often collect en route or at the end of a journey. It is not important that a fare should be collected, but it is essential that the relationship of carrier and passenger exist. In the present case the jury was justified in finding that plaintiff was a passenger. ■ A carrier of persons for reward must use the utmost care and diligence. (Civ. Code, § 2100.) ''The expression 'highest degree of care' is no stronger than the statutory requirement 'utmost care.' '' (*Osgood* v. *Los Angeles etc. Co.*, 137 Cal. 280 [70 P. 169, 92 Am. St.Rep. 171].) The skill and vigilance required of a prudent operator of the moving vehicle, as in this case, should have been of the highest degree. The previously quoted instructions might have been reframed, but under the facts of this case the use of the words ''highest degree of care'' was proper.

■ The issue of the motorman's negligence justified the instruction on the duty of the company to provide a safe place to board the car. It was negligent for the motorman to operate the car as he did because the company had a duty not to do anything to render its customary loading place unsafe.

■ Defendants complain that certain offered instructions were not given. The one deserving of mention reads: ''If you find from the evidence that Rosa Lagomarsino was guilty of contributory negligence, as defined in these instructions, however slight such contributory negligence on her part may have been, then you should return your verdict for the defendants.'' The significance of the refused instruction lies in the fact that the quantum of contributory negligence of plaintiff, if any, may have bothered the jury. The jury returned to the court after deliberation, at which time the following transpired: ''THE COURT: You are the foreman? A JUROR: Yes, Your Honor. Your Honor, the jurors would like to ask this question: Can damages be awarded if contributory negligence, regardless of degree, is established? THE COURT: Will you repeat that question? THE JUROR: Can damages be awarded if contributory negligence, regardless of degree, is established?'' Thereupon, the court gave an instruction not previously given which contained the following: ''If you find that plaintiff was negligent, you then must determine a fourth issue, namely: Did that negligence contribute

in any degree as a proximate cause of the accident? If you find that it did, your verdict must be for the defendant."

Appellants cannot complain of this instruction. Rather than attempt an extemporaneous definition of contributory negligence, the court read a form instruction. To object to the instruction given because it fails to say "contributory negligence however slight" when it does say that negligence in any degree will bar plaintiff's recovery, is to quarrel about the method of expressing rather than the substance of the rule.

The statement of the attorney for the plaintiff that "your attitude has always been 'the public be damned' " is to be condemned. A preceding statement by the attorney for defendants that "we can't control the public" may have called for a reply but not one that might tend to excite a resentful feeling against the adversary. The excitement of argument in the trial of cases should not so interfere with the cool, calm presentation of a client's case as to prejudice the cause upon appeal. However, the trial court passed upon the question and evidently determined that the remark did not in fact prejudice the cause of defendants. The jury was admonished to disregard the remark. "A trial judge is in a better position than an appellate court to determine whether a verdict is probably due wholly or in part to misconduct of counsel and his conclusion in the matter will not be disturbed unless, under all the circumstances, it is plainly wrong." (*Aydlott* v. *Key System Transit Co.,* 104 Cal.App. 621, 629 [286 P. 456]; see, also, *Walling* v. *Kimball,* 17 Cal.2d 364 [110 P.2d 58].)

The judgment is affirmed.

Peters, P. J., and Bray, J. pro tem., concurred.

A petition for a rehearing was denied June 28, 1945, and appellants' petition for a hearing by the Supreme Court was denied July 26, 1945.